### RAILWAY COMPANY *v.* McCARTHY.

1. The court reaffirms its former decisions, that a court is not bound to give instructions in the language in which they are asked.  If those given sufficiently cover the case, and are correct, the judgment will not be disturbed.

2. Unless forbidden by its charter, a railroad company may contract for a shipment over connecting lines; and, having done so, is liable in all respects upon them as upon its own lines.  In such a case, the shipper is authorized to assume that it has made the requisite arrangements to fulfil its obligations.

3. Where such a contract is not, on its face, necessarily beyond the scope of the powers of the corporation, it will, in the absence of proof to the contrary, be presumed to be valid.

4. The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail, where it would defeat the ends of justice or work a legal wrong.

5. Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he is estopped, after litigation has begun, from changing his ground and putting his conduct upon another and different consideration.

ERROR to the Circuit Court of the United States for the ,ern Dist·ict of Missouri.

This is an action by John McCarthy against the Ohio and Mississippi Railway Company, to recover damages alleged to have been sustained by him in consequence of negligence, carelessness, and delay on the part of the defendant in the execution of the following contract of affreightment : —

"This agreement, made this twenty-third day of September, A.D. 1873, between the Ohio and Mississippi Railway Company, party of the first part, and John McCarthy, party of the second part, witnesseth : —

"That the party of the first part will forward to the party of the second part the following freight : to wit, sixteen cars, more or less, from E. St. Louis to Philadelphia, at the rate of $130 per car, which is a reduced rate, made expressly in consideration of this agreement; in consideration of which the party of the second part agrees to take care of said freight while on the trip, at his or their own risk and expense; and that the party of the first part shall not be responsible for any loss, damage, or injury which may happen to said freight in loading, forwarding, or unloading, by suffocation or other injury caused by overloading cars, by escapes from any cause whatever, by any accident in operating the road, or delay caused by storm, fire, failure of machinery or cars, or obstruction. of track from any cause, or by fire from any cause whatever, or by any other cause except gross negligence; and that said party of the first part and such connecting lines shall be deemed merely forwarders and not common carriers, and only liable for such loss, damage, injury, or destruction of freight as may be caused by gross negligence only, and not otherwise.

"Witness our hands and seals in duplicate.

"OHIO & MISSISSIPPI RAILROAD COMPANY. [SEAL.]
"By H. COPE, *Agent.*
"JOHN McCARTHY." [SEAL.]

The facts in the case, as exhibited by the bill of · exceptions, are set forth in the opinion of the court. They are, therefore, omitted here.

Upon the close of the testimony, the defendant requested the court to charge the jury —

1. That the plaintiff cannot recover damages for such loss, damage, or injury as was sustained by his cattle by loading, forwarding, or unloading; by suffocation or other injury caused by overloading cars; by escapes from any cause whatever; by

any accident in operating the road, or delay caused by failure of machinery or cars, or obstruction of track from any cause except gross negligence ; or from any cause not occasioned by gross negligence on the part of the Ohio and Mississippi Railroad Company, or the Marietta and Cincinnati Railroad Company, or the Baltimore and Ohio Railroad Company.

2. That under the contract the plaintiff can only recover for such injuries or damages as the cattle sustained before they passed into the possession of the Marietta and Cincinnati Railroad Company.

3. That the plaintiff cannot recover for such injuries as his stock sustained after they passed into the possession of the Baltimore and Ohio Railroad Company at Parkersburg.

4. That it was not the duty of the defendant, or its connecting line, the Baltimore and Ohio Railroad Company, to start out from Parkersburg on Sunday with the plaintiff's cattle, and that the plaintiff cannot recover damages for failure to do so.

5. That the jury must find for the defendant, unless they shall believe from the evidence that the plaintiff was the sole owner of the cattle in controversy; and that if they shall believe from the evidence that Hensley was a part-owner of the cattle, or in the proceeds thereof, that they must find for the defendant.

6. That the plaintiff cannot recover for such injuries as the cattle sustained through the negligence of the defendant, or of the other railroad companies operating the connecting lines, provided that the negligence of the plaintiff, or his employés or agents, contributed thereto.

7. That if the jury shall find from the evidence that the cattle in controversy had been confined in the defendant's cars for a longer period than twenty-eight consecutive hours upon their arrival at Cincinnati, it was the duty of the defendant to unload them, for rest, water, and feeding; and the defendant cannot be made liable for that detention.

8. That if injuries were sustained in consequence of causes specified and excepted in the contract of shipment made at East St. Louis, then the burden of proof is upon the plaintiff to show that such injuries were occasioned by the negligence of the defendant.

The court gave the instructions embraced by the sixth, seventh, and eighth requests, but refused all the rest. To which refusal the defendant excepted.

The court thereupon, *sua sponte*, charged as follows : —

" The contract between the plaintiff and the defendant contemplates that the owner, through his own agents, should have the care and custody of the cattle throughout the entire route, — that is, the loading and unloading of them at the necessary intervals of rest, food, and water, — seeing that they were properly loaded and unloaded, and properly cared for.

" The defendant bound itself to transport safely, if it could be so done through the exercise of ordinary care and diligence on its part.

" Ordinarily, a common carrier, — that is, a railroad, — in the absence of a special contract of this kind, is held as an insurer. In other words, nothing that could be prevented by prudence or foresight is he excused from having done; and he must transport the cattle to their destination, unless something beyond his power and control prevents it. But that is not this contract. The parties to this suit presented a special contract for the transportation of the cattle in question ; and it is for the jury to determine from the evidence whether the cattle were injured, or the plaintiff sustained any damages, in consequence of the gross neglect of the defendant or of the connecting railroads. The defendant was bound to exercise ordinary care and diligence in operating the railroad, so as to prevent injury to the cattle, arising from delays or otherwise.

By the terms of the contract, the care of the cattle devolved on plaintiff and his agents, and not on the defendants. For any injury to the cattle caused by the manner of loading or unloading the same, or by the nature of their habits, not caused by the negligence of the defendant in operating the railroad and cars, the plaintiff cannot recover. That is, if those cattle, from their very nature, among themselves hurt themselves, independent of what the railroad was doing, externally to the cars, the plaintiff cannot recover for that.

" The defendant contends that at Parkersburg the plaintiff, instead of sending forward the cattle, made a new and

independent contract with the Baltimore and Ohio Railroad Company; that for the transportation from Parkersburg to Baltimore the plaintiff made an entirely new contract, and did not go forward under the old contract; that he entered into a new contract with other parties, and under that contract he will have to look to the other parties for redress. But, on the other hand, the plaintiff contends that the Baltimore and Ohio Railroad Company refused to permit the cattle to go forward unless the alleged new contract was signed. If the alleged contract was signed by the plaintiff's agent as the sole means whereby the cattle could go forward, as the original contract with defendant contemplated, then the signing of that new paper at Parkersburg did not release or discharge the defendant from its obligations to send forward such cattle, as originally agreed, without unreasonable delay.

" The original contract was made upon the part of the Ohio and Mississippi Railroad to transport to Philadelphia, for a certain price per car, sixteen car-loads of cattle, the privilege being given to the plaintiff to sell as he pleased at Cincinnati or at Baltimore. Now, the Ohio and Mississippi Railroad took upon itself the sending of the cattle beyond its terminus at Cincinnati, and took the freight for the whole distance, and was bound to see that the cattle were carried the whole distance. It made the agreement, and must see it executed.

" Consequently, if when under that agreement those cars reached Parkersburg, this intermediate road, which was the agent, the Baltimore and Ohio Road, refused to take the cattle forward despite the agreement with the Ohio and Mississippi Railroad, unless the plaintiff would sign a paper whereby he would exonerate it from any thing that might happen; if, then, the plaintiff signed, or his agent signed, the paper under those circumstances, as the only means of getting those cattle forward, that defence avails nothing.

" The transportation of cattle for long distances has caused, for its protection, recent legislation by Congress. That legislation requires under a penalty, that cattle transported over railroads shall, in the absence of unavoidable delays by storm or accident, have a rest for at least five consecutive hours, for each

run of twenty-eight hours. In other words, cattle shall not be confined in cars for more than twenty-eight consecutive hours, without giving them at least five consecutive hours for rest, food, and water. An act very important, though it is not involved directly in this case. You have heard a great deal about the forty-four hours' run in this case. Every effort to do that is a violation of the express law of the land, unless occasioned by storm or accident.

"In the transit from East St. Louis to Baltimore, in obedience to the law of the land, a delay which said law requires is not an unreasonable delay for which the defendant is chargeable. It was bound to obey the law; and that amount of delay is not a reasonable delay, but a required delay. For all such delays as occurred in that run, pursuant to law, it, so far as being amenable to this plaintiff, is justified, for it was bound by law to make such delays; and the plaintiff himself, having custody of the cattle, is subject to a penalty if he transported the cattle for a longer run than twenty-eight hours without giving them, after that, five full hours' rest. So, in computing this question of unreasonable delay, you will bear in mind they were bound to give five consecutive hours for every twenty-eight hours' run.

"It is, therefore, for the jury, in the light of said requirements of law, for such delays, to determine whether there was, in addition thereto, any unreasonable delays caused by negligence on the part of the defendant or the other roads. Take into consideration the distance to be travelled, and the usual and ordinary modes of transportation in such cases. The main question, then, is, whether the cattle were injured from the negligence of the defendant or any of the intermediate lines, without the plaintiff or his agents contributing thereto. If both parties contributed to the injury, neither party can recover from the other."

To the said charge and statement of facts by the court made to the jury, and to the several propositions therein announced by the court as the law of the case, the defendant then and there excepted.

There was a verdict and judgment for the plaintiff, whereupon the company brought the case here.

*Mr. D. W. Paul* for the plaintiff in error.

The plaintiff in error was only a forwarder. In the absence of any special contract, it was, therefore, only bound to carry the cattle safely and securely over its own road, and, at its terminus, deliver them to the succeeding company, with suitable directions for their carriage the rest of the way. *Railroad Company* v. *Manufacturing Company*, 16 Wall. 318; *Railroad Company* v. *Pratt*, 22 id. 123; Story, Bailments, sect. 448; *Reed* v. *United States Express Co.*, 48 N. Y. 462; *Inhabitants, &c.* v. *Hall et al.*, 61 Me. 519; *Hooper* v. *Wells, Fargo, & Co.*, 27 Cal. 40.

The plaintiff in error cannot be held liable for the failure of its connecting line, the Baltimore and Ohio Railroad Company, to forward the cattle from Parkersburg on Sunday. Code of West Virginia (1868), p. 694, c. 149, sects. 16, 17; *Pate* v. *Wright et al.*, 30 Ind. 476; *Powhatan Steamboat Co.* v. *Appomattox Railroad Co.*, 24 How. 247.

*Mr. John D. S. Dryden, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

The defendant in error was the plaintiff in the court below. He brought this action to recover damages from the railroad company for alleged breaches of a contract entered into by the parties on the 23d of September, 1873, for the transportation by the company of sixteen car-loads of cattle from East St. Louis to the city of Philadelphia. It was stipulated that McCarthy should have the entire care and charge of the cattle during the trip; that he should load and unload them; that the company should be deemed forwarders and not common carriers; and that it should be liable only for loss or injuries caused by its gross negligence. The cattle were shipped, accordingly, at East St. Louis, under the care of Hensley, an employé of McCarthy. They were transported thence by the defendant's road to Cincinnati, thence by the Marietta and Cincinnati road to Parkersburg, in West Virginia, and thence by the Baltimore and Ohio road to Baltimore. There the performance of the contract terminated. The plaintiff gave evidence tending to prove the following state of facts: Between East St. Louis and Cincinnati there was unnecessary delay and serious

injury to the cattle, arising from the gross negligence of the company's servants.   At Cincinnati, Hensley sold forty of the cattle;  This was done because, by reason of the injuries they had received, they were unfit for further transportation.   Between Cincinnati and Parkersburg there was further unnecessary delay, arising from the same cause which produced it between East St. Louis and Cincinnati.   The cattle arrived at the latter place five hours behind the proper time.   Hensley insisted that they should be shipped for Baltimore on the morning of the next day, which was Sunday.   The Baltimore company received but refused to forward them until Monday morning; and refused to ship them at all, until Hensley signed a new and onerous contract touching their transportation upon the Baltimore road.   He at first refused; but, there being no other means of transportation east, he was constrained to submit, and signed under protest.

The defendant company gave evidence tending to contradict the plaintiff's evidence on all these points.   It was expressly proved that the Baltimore company " was not able to send the cattle out of Parkersburg on Sunday, because they had not. the necessary cars therefor at the time, and that they were sent at the first opportunity, which was on Monday morning."

The evidence as set forth in the bill of exceptions is wholly silent as to any other reason for not making the shipment on Sunday.

The testimony being closed, the company's counsel submitted sundry instructions, and prayed that they should be given to the jury.   A part was given and a part refused.   Proper exceptions were taken as to the latter.   Finally, the court instructed the jury at large according to its own views.

There is no question presented in the record as to the sufficiency of the pleadings, or the admission or rejection of testimony.   The exceptions and the assignments of error are confined to the instructions refused and to those given by the court *sua sponte.*

It has been repeatedly determined by this tribunal that no court is bound to give instructions in the forms and language in which they are asked.   If those given sufficiently cover the

case, and are correct, the judgment will not be disturbed, whatever those may have been which were refused.

We have examined the charge of the learned judge who tried the case below, and are entirely satisfied with it. It was full, clear, and unexceptionable. It submitted the case well and fairly to the jury, and was quite as favorable to the company as the company had a right to demand.

We have found no error in it.

There are a few points, and only a few, to which we deem it necessary particularly to advert: —

The suit was well brought by McCarthy. The only testimony as to the ownership of the cattle was given by him. He said, " William Hensley, besides myself, was interested in the cattle. He had a half-interest in the profits. I was the owner." If Hensley had been joined with McCarthy as a plaintiff, there must, upon this testimony, have been an amendment, by striking his name from the record, or the action must have failed. The facts called for no instruction, and the court properly refused to give any.

The contract with the defendant was for the transportation of the cattle the entire distance they were to go. It was stipulated that the company would forward " sixteen cars, more or less, from East St. Louis to Philadelphia, at the rate of $130 per car, which is a reduced rate, made expressly in consideration of this agreement." No other company was named, there was no mention of compensation to any other party, and nothing was said of a change to the cars of any other company on the way. Such corporations, unless forbidden by their charters, have the power to contract for shipments the entire distance over any connecting lines. *Railroad Company* v. *Pratt* (22 Wall. 123) is conclusive in this court upon the subject. The principle is so well settled in this country, that a further citation of authorities in support of it is unnecessary. Such is also the rule of the English law. Both here and there the company is liable in all respects upon the other lines as upon its own. In such cases, the public has a right to assume that the contracting company has made all the arrangements necessary to the fulfilment of the obligations it has assumed. *The Great Western Railway Co.* v. *Blake*, 7 H. & N. 986; *Weed* v. *Railroad Com-*

*pany,* 19 Wend. (N. Y.) 534; *Knight* v. *Portland, Saco, & Portsmouth Railroad Co.,* 56 Me. 234.  When a contract is not on its face necessarily beyond the scope of the power of the corporation by which it was made, it will, in the absence of proof to the contrary, be presumed to be valid.  Corporations are presumed to contract within their powers.  The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong.  *Union Water Co.* v. *Murphy's Flat Fluming Co. et al.,* 22 Cal. 620; *Morris Railroad Co.* v. *Railroad Company,* 29 N. J. Eq. 542; *Whitney Arms Co.* v. *Barlow et al.,* 63 N. Y. 62.  There is no conflict in the evidence as to the terms of the contract.  It is all one way, and leaves no room for doubt.

The contract contains some provisions in favor of the company, to which we have not adverted.  They do not appear to have been challenged in the court below, and have not been here.  They are, therefore, not before us for consideration, and we pass them by without remark.

It does not appear that Hensley had any authority to enter into the contract forced upon him at Parkersburg.  The original contract included the Baltimore road.  The Parkersburg contract could not, therefore, in any wise, affect his rights with respect to the defendant.  The court instructed the jury properly on the subject.  It must be laid out of view as an element in the case.

The question made by the company upon the Sunday law of West Virginia does not, in our view, arise in this case.  We have already shown that the defendant proved upon the trial that it was impossible to forward the cattle on Sunday, for want of cars.  And it is fairly to be presumed that no other reason was given for the refusal at that time.  It does not appear that any thing was then said as to the illegality of such a shipment on the Sabbath.  This point was an after-thought, suggested by the pressure and exigencies of the case.

Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration.  He is not per-

mitted thus to mend his hold.   He is estopped from doing it by a settled principle of law.   *Gold* v. *Banks*, 8 Wend. (N. Y.) 562; *Holbrook* v. *White*, 24 id. 169; *Everett* v. *Saltus*, 15 id. 474; *Wright* v. *Reed*, 3 Durnf..& E. 554; *Duffy* v. *O'Donovan*, 46 N. Y. 223; *Winter* v. *Coit*, 7 id. 288.  The judge below committed no error in refusing to charge as requested upon this subject.

*Judgment affirmed*