YOUNG et al. v. UNITED ZINC COS. et al. †

(Circuit Court of Appeals, First Circuit. September 10, 1912.)

No. 977.

**CORPORATIONS (§§ 457, 458\*)—CONTRACTS—ULTRA VIRES.**

A contract by which a zinc mining company, which owned and was opening mines, sold and agreed to deliver zinc concentrates at the rate of 100 tons weekly for three years, commencing at a future date, was not ultra vires, in the absence of affirmative proof that it did not have reasonable expectation of producing the quantity of ore sold; nor was its subsequent purchase of ore from others to fill the contract ultra vires, where it failed to produce sufficient from its own mines.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1808, 1809, 1810; Dec. Dig. §§ 457, 458.\*]

Appeal from the District Court of the United States for the District of Massachusetts.

Suit in equity by Royal Bosworth Young and others against United Zinc Companies and others. Decree for defendants, and complainants appeal. Affirmed.

For opinion below, see 194 Fed. 461.

Royal B. Young, of Boston, Mass. (Walter H. Foster, Charles S. Hill, Charles M. Ludden, Henry P. Mason, and Reuben A. Reese, on the brief), for appellants.

Samuel Williston, of Cambridge, Mass. (Hollis R. Bailey and James A. Nelson, on the brief), for appellees.

Before PUTNAM, Circuit Judge, and BROWN and HALE, District Judges.

BROWN, District Judge. This is an appeal from the decree of the District Court dismissing a bill brought by Royal B. Young and others, as stockholders of the United Zinc Companies, a mining corporation, to restrain further performance of a contract for the sale and purchase of zinc concentrates, and for an accounting of profits received by certain of the defendants from part performance of the contract.

The defendants are the United Zinc Companies, Beer, Sondheimer & Co., a copartnership, and the National Zinc Company, to which the contract was assigned by Beer, Sondheimer & Co.

Relief was sought on the ground that the contract and acts under it were ultra vires of the charter of the United Zinc Companies.

By the written contract between the United Zinc Companies and Beer, Sondheimer & Co., dated July 31, 1907, the United Zinc Companies agreed to deliver 15,600 tons (of 2,000 pounds) of zinc concentrates, delivery at the rate of 100 tons weekly at the mill bins in Joplin district, Missouri. It is provided:

"This contract shall begin by thirty (30) days' notice to the parties of the second part at any time from September to November, 1907, and continue in force for three (3) consecutive years thereafter, except as herein otherwise

provided, and the total deliveries shall amount to not less than fifteen thousand six hundred (15,600) tons."

The complainant contended that the contract was ultra vires, because not limited to such ore as the United Zinc Companies might produce from its own mines, and that it was a contract for "speculative dealing in ore as merchandise, not within the scope of the charter of the United Zinc Companies."

It is charged that Beer, Sondheimer & Co., at the time of making the contract, knew that the United Zinc Companies was not producing and might not produce all of the ore called for by the contract; that the National Zinc Company had knowledge of the fact that the United Zinc Companies might purchase, and later that it did actually purchase in the open market, substantially all of the ore delivered under the contract. It is also charged that at the time of the execution of the contract the United Zinc Companies was producing but 30 or 40 tons per week; that this production was discontinued in November, 1907; that the total shipments under the contract were about 9,830 tons, of which but about 175 tons were produced by the United Zinc Companies from its mines.

The District Court found as follows:

"The Zinc Companies was then opening and operating a mine or mines of its own in the Joplin territory, and had mining rights in other mines in that territory.

"I find as a fact that the contract was entered into in good faith by the contracting parties, and that the Zinc Companies at the time had an expectation that it might soon, if not at the beginning, produce sufficient ore from its own mining properties and mining rights to enable it to fulfill the contract. It unfortunately resulted, however, as sometimes happens in mining enterprises, that its particular properties could not be made to produce ore in sufficient quantities, except at a very much larger expense than was at first supposed; and it was found that it could buy in the open market Joplin ore, produced from mines more favorably situated at a very much less cost than it could be produced from its own mines and the Zinc Companies proceeded to do this, buying considerably more than its own mines produced in order to fulfill the contract."

Upon an examination of the record and briefs, we find no reason to differ with these conclusions of fact.

The question whether the contract for future delivery of ore not then mined was ultra vires must be determined from the charter, the terms of the contract, and the circumstances at the time of its execution. If valid when made, the contract did not subsequently become invalid. The question of the legal power to make the contract is distinct from the question of the legality of the purchases made in order to perform its requirements. The fact that the contract for the sale of zinc concentrates does not contain any express limitation to ore produced by the United Zinc Companies from its mines is insufficient to make a case of prima facie invalidity of the contract.

"When a contract is not on its face necessarily beyond the scope of the power of the corporation by which it was made it will, in the absence of proof to the contrary, be presumed to be valid. Corporations are presumed to contract within their powers." Railway Co. v. McCarthy, 96 U. S. 267, 24 L. Ed. 693.

No authority is presented which supports the proposition that a corporation, authorized to sell its product, cannot, in the exercise of reasonable judgment and in good faith, contract for the future delivery of a fixed amount of goods, although the goods have not then been produced. A contract for future delivery, based upon reasonable provision for future production, is a common transaction, and an ordinary method of conducting business. To provide by contract a market for goods to be produced in future may be good business judgment, and we see no reason why a mining corporation should be limited in its contractual ability by the amount of goods on hand. A corporation could not relieve itself from the obligation of such a contract merely by discontinuing production found to be unprofitable.

Upon the face of the contract there appears no legal impossibility of performance by the United Zinc Companies through acts fully within its charter powers. The contract being on its face valid, the burden of proving invalidity is upon the party making the assertion. Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183. It is the ordinary rule that contracts for goods to be delivered at a future date are valid, even though the seller has not the goods, nor any other means of getting them than to go to the market and buy them. This rule might be subject to modification in the case of a manufacturing or mining corporation. Notice that a corporation chartered for mining or manufacturing had no present or prospective means of producing the article for future delivery, but intended from the outset to go into the market to purchase the commodity, might make applicable the doctrine of ultra vires. In the present case, however, there is neither legal nor proven physical impossibility or improbability that the United Zinc Companies could perform by acts fully within the scope of its charter powers.

It may be noted that, although the contract was made in July, 1907, deliveries could not be called for before September, and it is not proven to have been impossible or impractical to have enlarged the production in that time. Under its charter powers the companies could lease or otherwise acquire mines, mining rights, and lands, and it was a lessor of a number of mines.

Complainants urge that there is not sufficient evidence to support the contention that the United Zinc Companies might have produced enough ore from its own mines to meet the requirements of the contract, and state that it is no part of the appellants' case to refute these contentions, and that, if these facts are asserted by the appellees, the burden is on them to prove them. We think upon this point the complainants are in error. The burden is upon them to show the invalidity of a contract in writing, and to establish that it was ultra vires.

We have already said that upon its face the contract is not ultra vires, since it is one that could be performed within the charter powers. If the complainants contend that it was ultra vires by reason of matters in pais, because it was known that the company did not have the business ability or the physical means to produce the ore,

the complainants have the burden of proof. The presumption of validity must be overcome by positive testimony. Even if we assume that the defendants had full knowledge that, after deliveries were called for, these deliveries were of ores purchased on the open market, this would not affect the case, unless there were proof of a mutual understanding at the time of the contract that this should be done. The testimony shows that it was contemplated that during the earlier part of the contract it would be necessary to buy from its lessees or on the open market. We have no doubt, if it was considered desirable, in order to secure a market for the production throughout a long period, to make temporary purchases to fulfill the obligation for a limited period, that this would be a proper exercise of an incidental power.

The complainants further insist that the purchases of ore to fulfill the contract were ultra vires acts. We may concede that if, at the outset, both parties contemplated a mere merchandizing of ore, the contract would be held ultra vires; but we are of the opinion that if this is not proved, and the contract was valid when made, it would be within the legitimate power of the corporation to fulfill its obligation in the cheapest way. Having assumed a legal obligation which it had authority to assume, it was liable to damages for its nonperformance. It would be unreasonable to hold that, if it was more profitable to close its mines and to use its money for the purchase of ore, instead of for the excavation of ore, it could not do so. This would be in no sense a speculative dealing in ore, but merely such reasonable method of discharging its obligation as is incident to the right to incur a contract obligation.

We, therefore, are unable to accept the proposition that the purchase of ores to meet a previous contract was itself ultra vires. It seems quite clear that the provision in favor of the United Zinc Companies, whereby it had an option to suspend deliveries in case spelter went below five cents, unless the other party was willing to pay the same price as when spelter was quoted at five cents per pound, does not in any way invalidate the contract, nor affect the question of ultra vires.

We see no sufficient reason for disagreeing with the conclusions of fact and law of the District Court.

The decree of the District Court is affirmed, with costs to the appellees.