## Procter & Gamble Company, Defendant in Error, v. H. Emerman, trading as American Iron & Supply Company, Plaintiff in Error.

### Gen. No. 20,073.

1. INTEREST, § 8*—*what constitutes instrument in writing within statute.* Where recovery was sought for breach of contract to supply cast borings *held* that a letter of offer, neither before nor after acceptance, was such an instrument in writing as to come within the sense of such words used in the interest statute.

2. SALES, § 382*—*where buyer may charge resulting loss on purchase elsewhere.* In an action by a buyer for breach of contract for failure to deliver cast borings, where the buyer made request for quotations for a like quantity and they were bought at the lowest price that they could be bought and they cost the buyer a certain sum more than the purchase price, *held.* under the circumstances, in the absence of a standard market price, the proper measure of damages was used in awarding an actual compensation and no more for the loss sustained by reason of the seller's repudiation of the contract, since the buyer took the usual best and probably only way of supplying the default made by the seller· by buying at the best price possible.

3. INTEREST, § 6*—*when not allowed in action on breach of contract of purchase.* In an action for breach of contract to supply cast borings where the damages were unliquidated and determinable only upon proper proof as to the amount. thereof, *held* that interest could not be properly allowed, as on money withheld for unreasonable and vexatious delay.

Error to the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in this court at the March term, 1914. Affirmed on remittitur, otherwise reversed and remanded. Opinion filed March 8, 1915.

H. C. LEVINSON, for plaintiff in error; LEO W. HOFF-MAN, of counsel.

HOLT, CUTTING & SIDLEY, for defendant in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

February 15, 1912, the Procter & Gamble Company, having a manufacturing plant at Ivorydale not far from Cincinnati, Ohio, wrote to the "American Iron & Supply Company," a name under which one Herman Emerman of Chicago was doing business, asking for a quotation of prices on 500 tons of clean cast borings "delivered Ivorydale, Ohio, in equal quantities, delivered during February and March." In answer the Procter & Gamble Company received by mail two days afterwards the following letter:

"AMERICAN IRON & SUPPLY Co.,
Chicago 2-16-12.
PROCTER & GAMBLE COMPANY,
Ivorydale, Ohio.

Gentlemen: In answer to your letter of the 15th beg to advise we would be glad to sell you 500 tons Good Clean Cast Iron Borings at $7.00 net ton. Delivered your works Ivorydale. For shipment to be made as you mention during the months of February and March. If this price is satisfactory to you, kindly favor us with your order by return mail and oblige,
Yours very truly,
AMERICAN IRON & SUPPLY Co.,
per H. Emerman."

On the 19th of February the Procter & Gamble Company inclosed the following order to the "American Iron & Supply Co.":

"This is our Order No. 4926.
IVORYDALE PURCHASING DEPARTMENT.
Ivorydale, Ohio, Feb. 19, 1912.
To AMERICAN IRON & SUPPLY Co.,
Chicago, Ills.

Enter for prompt attention our order as below:

500 tons good clean cast iron borings—price $7.00 per net ton delivered Ivorydale. Should it be necessary to communicate with us regarding this order,

refer to the above number and show our order number on your invoice without fail.
Shipping Directions:
  Ship Deliveries during          Via — Route
    February and March.
       THE PROCTER & GAMBLE COMPANY,
             by A. Fowler."

Accompanying the order was a letter from the Procter & Gamble Company to the American Iron & Supply Company acknowledging the receipt of the letter of the 16th from the Supply Company, noting that an order for 500 tons of borings was inclosed, and concluding:

"Please see that deliveries are made promptly as we will depend on you for our requirements. After these deliveries are completed we will contract for a further supply. Borings to be shipped in box cars."

The borings were not shipped. The order was returned by "The American Iron & Supply Co." in a letter signed "The American Iron & Supply Co. per H. Emerman," dated February 24, 1912, in which it was said that "a stenographical error" had been made in the letter of the Supply Company of February 16th, "as the price of borings should have been $7.00 net ton F. O. B. cars Chicago, instead of Ivorydale. The rate is $1.80 per ton from Chicago to Ivorydale."

The Procter & Gamble Company declined to accept or accede to this repudiation of the contract which they maintained had been made, and a correspondence ensued in which the Procter & Gamble Company demanded a performance of the alleged contract and "The American Iron & Supply Company" refused it. In a letter of February 27th, Emerman, under the name of the American Iron & Supply Company, insisted again that a "stenographical error" had been made. He said:

"The letter was dictated by the writer but not reread and it was signed by the stenographer. Our stenographer finds in looking over her notes that she has $7.00 F. O. B. Chicago, but that in transcribing same

she made an error and wrote *F. O. B.* Ivorydale instead of *F. O. B.* Chicago, and she is ready to testify to that effect.''

March 1st Emerman wrote:

''We are herewith again returning your order, as we have already advised you the reason in our letters of February 24th and 27th. This is final.''

Writing apparently to lawyers for the Procter & Gamble Company, who had intervened in the matter, Emerman, writing as before under the name of the ''American Iron & Supply Co.'' said:

''We received your letter of the 6th and contents noted. In reply wish to advise that the only thing we can say is that there has been a stenographical error made as to the price. The price on the borings was to be $7.00 net per ton Chicago, instead of delivered. Our stenographer made a mistake in transcribing her notes.''

No other reason than the alleged ''stenographical error'' was given by Emerman or ''The American Iron & Supply Company'' in any of this correspondence for the nondelivery of the borings according to the tenor of the claimed contract. Nothing was said of any want of authority in the stenographer of Emerman to sign the letter of February 16th nor of the letter of Procter & Gamble Company of February 19th, covering the order, injecting any new condition into the order or proposed purchase. After the cessation of the correspondence the Procter & Gamble Company sent out inquiries by mail to various parties dealing in ''clean cast iron borings,'' asking for quotations on 500 tons. Mr. Fowler, for the Procter & Gamble Company, testified that he bought such borings at the lowest price he could get them at; that the price kept advancing, and that when he had obtained at the lowest price at which he could buy substantially 500 tons—that is, 500 tons lacking a few pounds—they had cost the Procter & Gamble Company $662.04 more than it would have been obliged to pay Emerman for them

under the terms of the contract which it claimed he had made with it.

September 30, 1912, the Procter & Gamble Company brought suit against Emerman in the Municipal Court of Chicago for the damages thus sustained by it by the breach of the alleged contract of sale, and on a trial before the court without a jury obtained judgment October 20, 1913, for $704.48, being the amount before named of $662.04, with interest on it at the rate of 5 per cent. per annum from July 1, 1911, to October 20, 1913, the first named date being arbitrarily selected as one later than all payments made by the Procter & Gamble Company on account of the borings bought in substitution for those contracted for with Emerman.

A writ of error has been sued out of this court to reverse this judgment. We see no sufficient reason to disturb it except in the matter of interest allowed. It is argued that the correspondence between the plaintiff and the defendant did not constitute a contract because the acceptance of the defendant's offer was not in the exact terms of the offer, but contained a material additional element, namely, that the borings should be shipped in box cars. The so-called "condition" was not in the order, but might well be considered as a mere request by the purchaser. Although Mr. Fowler in answer to questions on cross-examination said he wanted the borings shipped in box cars and wouldn't have accepted them any other way, it remains the fact that he was not given the chance either to take or reject them on account of the way they were shipped. Whether a liability for a breach of contract would have attached to the Procter & Gamble Company had it refused the borings because not shipped in box cars, is the test of whether a contract existed, irrespective of this request or "condition" concerning box cars.

But the question is academic and immaterial in this case. No objection to the performance of the con-

tract was made before this suit was brought because of this suggestion of "box cars." The sole reason assigned for the refusal was the alleged error made by the stenographer in transcribing her notes.

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." *Railway Co. v. McCarthy,* 96 U. S. 258; *Schuyler County v. Missouri Bridge & Iron Co.,* 256 Ill. 348.

The same reasoning holds good as to the alleged want of authority on the part of Emerman's stenographer to sign the letter of February 16, 1912, after dictation to her.

As the Court very properly said in refusing to hold the so-called "Proposition of law" which set forth that the said letter "was never signed by the defendant and that the signature thereto was never authorized by the defendant," this is a question of fact, not of law. The defendant is not at liberty under the circumstances now to raise it; but if he were, there was quite enough evidence in the record to warrant the trial judge in holding that the stenographer had the requisite authority, despite the somewhat unconvincing testimony of the defendant on the witness stand.

Whether or not the alleged mistake in "transcription" was so "proven" as to prevent the trial judge from justifiably holding that there was no mistake, is much more than doubtful. The statements made by Emerman in letters to the plaintiff after the order had been sent are not evidence of the fact; nor is the properly excluded "certificate" of Muriel Goldstine, which the defendant tried to introduce. We fail to find that Emerman testified in this case that he did not dictate to his stenographer the words which occur in the letter sent—"Delivered your works, Ivorydale." It may be noted that the excluded statement of the

stenographer says she made a mistake and wrote "$7.00 F. O. B. Ivorydale"—a manifestly incorrect assertion.

But not only did Emerman himself neglect at least to swear that he dictated anything different from that which was transcribed, he did not call on the stand the stenographer who he maintains made the mistake. She was present in the court room. It was for him to prove the mistake if he deemed it material, and the quotation in his own brief from Wigmore on Evidence applies to the situation:

"The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant, permits the inference that its tenor is unfavorable to the party's cause."

Emerman's best excuse, however, for not attempting to produce this testimony is inconsistent with his main contention. It was not material. Even if the mistake in the quotation of price existed, it did not prevent the formation of a contract. It could not do so unless the price quoted was so low as to make the mistake obvious. *Steinmeyer v. Schroeppel*, 226 Ill. 9; *Singer v. Grand Rapids Match Co.*, 117 Ga. 86; *Crilly v. Board of Education*, 54 Ill. App. 371.

"Where there has been no misrepresentation and where there is no ambiguity in the terms of the contract, the defendant cannot be allowed to evade the performance of it by the simple statement that he has made a mistake. Were such to be the law, the performance of a contract could rarely be enforced upon an unwilling party who was also unscrupulous." Baggallay, Lord Justice, in *Tamplin v. James*, Law Reports, 15 Chancery Div. (1880) 215.

In this case, although it is maintained by the plaintiff in error that the alleged mistake was obvious because the price quoted was so low, the contention seems almost frivolous in view of the existence in the same argument, when the question of damages is considered, of the assertion that the price quoted was above the

current prices. We are of the opinion that the "mistake," if there were a mistake, was not obvious.

The complaint made that the trial judge committed error and vitiated the findings by adding explanations to his holdings on propositions of law is without merit. We see nothing improper in his action or wrong in his holdings.

The measure of damages is the only matter which can be considered as suggesting a question of doubt in this case. On full consideration, however, we deem that the testimony of Mr. Fowler for the plaintiff shows that a correct theory was adopted and that justice has been done by awarding an actual compensation and no more for the loss sustained by the defendant in error through the breach of the contract.

We think it sufficiently appears that it took the usual, best and, probably, the only way of supplying the default made by the plaintiff in error—that it bought the goods at the best price possible; that there was at the time no standard "market price" to be consulted and from which damages could be now computed. We therefore hold that $662.04 was the proper amount of damages for the court to assess. But we cannot see justification for adding interest to this. We are unable to accede to the position that the letter of offer, before or after acceptance, was "an instrument in writing" in the sense in which those words are used in our interest statute. And as the damages were unliquidated and could only be determined when proof was made that the correct method of determining their amount had been used, we cannot see how it is properly allowed, as on money withheld by "an unreasonable and vexatious delay of payment."

If the defendant in error remits within ten days from the amount of the judgment the sum of $42.44, the said judgment will be affirmed; otherwise it will be reversed and the cause remanded.

*Affirmed on remittitur; otherwise reversed and remanded.*