## LOGAN–GREGG HARDWARE CO. v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania. January 30, 1928.

No. 3564.

**1. Internal revenue $\Longleftrightarrow$38(1)—Delivery of certificate of overpayment constituted a payment sufficient to authorize recovery against collector, for unlawful collection of taxes.**

Delivery to collector of internal revenue of certificate of overpayment of taxes constituted payment sufficient to authorize recovery from collector of any amount so paid, providing payment was made pursuant to collection of taxes not lawfully due.

**2. Internal revenue $\Longleftrightarrow$7(3), 9(27)—Dividends pursuant to resolution of January 25, 1918, did not constitute part of "invested capital," though not actually withdrawn within first 60 days of taxable year (Revenue Act 1918, §§ 201(e), 326, Comp. St. §§ 6336⅛b(e), 6336⅞si).**

Under Revenue Act 1918, § 201(e), Comp. St. § 6336⅛b(e), declaring that any distribution made during first 60 days of taxable year shall be deemed to have been made from earning of preceding taxable years, dividends declared pursuant to resolution of company, did not constitute a part of "invested capital," as defined by section 326 (Comp. St. § 6336⅞si), for the year 1918, though amount of dividends declared were not actually withdrawn in cash during first 60 days of taxable year, and withdrawal of invested capital was properly declared as of January 25, 1918, pursuant to treasury regulation 45, art. 858.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Invested.]

**3. Statutes $\Longleftrightarrow$219—Treasury Department regulation promulgated by authority of Congress, and impliedly sanctioned by re-enactment of law, is entitled to great consideration.**

Treasury Department regulation, promulgated by authority of Congress, is entitled to great consideration, particularly where Congress has several times re-enacted the provisions of law which regulations were designed to

interpret, thereby impliedly sanctioning regulation.

At Law. Action by the Logan-Gregg Hardware Company against D. B. Heiner, Collector of Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for defendant.

Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., of Pittsburgh, Pa., for defendant.

GIBSON, District Judge. The instant action has been brought by the plaintiff to recover the sum of $5,209.10, with interest. The principal amount, it is claimed, was exacted from plaintiff by defendant in excess of the income and excess profits tax for the year 1918 that was actually due from plaintiff for that year.

### Finding of Facts.

The Logan-Gregg Hardware Company is a corporation organized under the law of the state of Pennsylvania, and has maintained an office in the city of Pittsburgh, in the Western District of Pennsylvania and within the Twenty-Third internal revenue district of Pennsylvania.

D. B. Heiner, since August 1, 1921, has been collector of internal revenue for the collection district above mentioned.

On January 25, 1918, the board of directors of the plaintiff company duly passed the following resolution:

"Resolved that we declare special salaries out of the earnings of the year 1917, representing 25 per cent. on the common stock and participating certificates, payable in cash or notes of the company bearing 5 per cent. interest, at the convenience of the company."

On January 31, 1918, in pursuance of the preceding resolution, plaintiff paid to a stockholder the sum of $6,345.70 in cash, and canceled his debt to the company in amount of $1,654.30; and at the same time it issued notes bearing 5 per cent. interest per annum, to other stockholders, in the aggregate amount of $60,325; and on April 17, 1918, pursuant to the same resolution, it issued like notes, in the aggregate amount of $21,000, to the remaining stockholder, who could have received such notes on January 31, 1918, but who was absent in Europe at that time and did not demand his notes until April 17, 1918. Said notes were delivered in payment of dividends.

On February 25, 1918, one of such notes, in amount of $2,000, was paid to a stockholder by the company; on May 28, 1918, another note, in amount of $1,000, was paid; and on May 31, 1918, others of such notes, in the aggregate amount of $70,825, were paid; and the last payment on said notes was made on November 16, 1918.

At the time said dividend was declared, and said notes were delivered on January 31, 1918, and thereafter the plaintiff company did not have on hand actual cash sufficient to pay the dividend declared in full, and issued notes, as aforesaid, to maintain in the treasury cash sufficient to meet the spring purchases of the company.

The plaintiff company, on June 27, 1918, paid in cash a dividend of $21,438, on the common stock of the company, and a stock dividend of $35,730, and during the same year paid dividends aggregating $11,987.50 on the preferred stock. These dividends were declared subsequent to the resolution of January 31, 1918.

At the dates appointed by law, the plaintiff company filed with defendant's predecessor in office its income and excess profits tax return for the year 1918, upon which return income and excess profits tax was assessed against the plaintiff in the sum of $116,928.49. An amended return was subsequently filed, whereupon the Commissioner of Internal Revenue reduced the assessment to the sum of $112,343.61, of which amount $101,356.72 was paid to defendant's predecessor in office, and of the balance $2,100.16 was paid to defendant in cash on February 13, 1926, and on July 14, 1923, $8,886.73 was paid to him by the application of a certificate of overassessment in plaintiff's favor.

In fixing plaintiff's income and excess profits tax for 1918, at the sum of $112,343.61, as stated, the Commissioner of Internal Revenue determined plaintiff's net income at the sum of $220,492.98, and its invested capital at $809,217.83. In arriving at the sum last mentioned as the amount of plaintiff's invested capital in 1918, the Commissioner deducted the total amount of the dividend declared on January 25, 1918, as aforesaid, to wit, $89,325, from the amount of plaintiff's invested capital for the year 1918, as claimed by plaintiff, prorating the amount of said dividend from January 25, 1918. Had the Commissioner not deducted the total amount of the dividend notes aforesaid, paid subsequent to March 1, 1918, from plaintiff's invested capital the average amount of such capital for 1918 would be $883,628.28, and its income and excess profits tax would have been $107,134.51.

On or about September 23, 1925, the plaintiff filed with the defendant collector, in

the form prescribed by the Commissioner of Internal Revenue, a claim for the refund of $5,209.10. This claim was based upon the amount of the said dividend declared by resolution of January 25, 1918, paid subsequent to February 25, 1918, deducted by the Commissioner from plaintiff's invested capital for the year 1918. It was rejected by the Commissioner on February 23, 1926.

### Opinion.

The issue in the instant action springs from the determination of the amount of plaintiff's invested capital for the year 1918 by the Commissioner of Internal Revenue. The Commissioner held such invested capital to be $809,217.83. In arriving at this amount he deducted from plaintiff's capital the total amount of the dividend declared by the resolution of January 25, 1918, hereinbefore set forth. Plaintiff contends that the Commissioner's determination was erroneous, in that only $10,000 of the dividend had been paid within the first sixty days of the taxable year, and was deductible, and the balance, $79,325, had been actually paid at various times after that period, and when the current earnings of the year were sufficient to pay it—thus making a deduction of more than $10,000 from invested capital, contrary to law. The defendant, by enforcing the alleged erroneous deduction of the Commissioner, plaintiff claims, collected $5,209.10 more than was due from plaintiff in payment of its income and excess profits taxes for the year 1918, and such amount, with interest, plaintiff now seeks to recover.

The defendant contends that the amount deducted, as aforesaid, from plaintiff's invested capital for the year 1918, was taken from it by the Commissioner in compliance with the governing statute and the lawful regulations established for its enforcement. He further urges, in defense of part of the claim, that this is a personal action, and that plaintiff under no circumstances can recover more than $2,100.16, the amount of cash actually turned over to defendant by it in payment of its 1918 taxes.

[1] The second matter of defense alleged by defendant is not well founded, in our opinion. On July 14, 1923, plaintiff had a certificate of overpayment of taxes for the year 1917 to the amount of $8,886.73, and on that date, instead of cashing the certificate and turning the cash over to defendant in payment of its 1918 taxes, it transferred the certificate to him. The delivery of the credit to the defendant was a payment to him, and plaintiff is entitled to recover from defendant any amount so paid, provided the payment was made to defendant pursuant to the latter's collection of taxes not lawfully due from the plaintiff.

[2] The conclusion just stated brings us to the consideration of the subject of the main issue in the case, the ruling of the Commissioner of Internal Revenue to the effect that all dividends paid pursuant to the resolution of January 25, 1918, reduced the plaintiff's "invested capital" as of that date by the amount of such dividends.

"Invested capital" is defined by section 326 of the Revenue Act of 1918 (40 St. L. p. 1092 [Comp. St. § 6336⅛i]). So much of that section as is material to the present matter is as follows:

"Sec. 326 (a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section):

\*    \*    \*    \*    \*    \*

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year:

\*    \*    \*    \*    \*    \*

"(b) As used in this title the term 'invested capital' does not include borrowed capital.

\*    \*    \*    \*    \*    \*

"(d) The invested capital for any period shall be the average invested capital for such period. \*   \*   \*"

By section 325 of the same act (Comp. St. § 6336⅛h) it is enacted:

"The term 'borrowed capital' means money or other property borrowed, whether represented by bonds, notes, open accounts, or otherwise. \*   \*   \*"

On April 17, 1919, under authority of the Revenue Act of 1918 (40 Stat. 1057) the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated certain regulations for the enforcement of the act. Article 858 of such regulations (see Regulations 45, p. 187) was designed to clarify section 326 of the Revenue Act and to prescribe the practice of the Bureau of Internal Revenue thereunder. It is as follows:

"Art. 858. *Effect of ordinary dividend.* —A dividend other than a stock dividend affects the computation of invested capital from the date when the dividend is payable and not from the date when it is declared, except that where no date is set for its payment the date when declared will be considered also the date when payable for the purpose of this article. For the purpose of computing invested capital a dividend paid after the expiration of the first sixty days of the tax-

able year will be deemed to be paid out of the net income of the taxable year to the extent of the net income available for such purpose on the date when it is payable. See article 857. The surplus and undivided profits as of the beginning of the taxable year will be reduced as of the date when the dividend is payable by the entire amount of any dividend paid during the first sixty days of the taxable year and by the amount of any other dividend in excess of the current net income available for its payment. In the case of a dividend paid during the first sixty days of a taxable year which exceeds in amount the surplus and undivided profits as of the beginning of the taxable year the excess will be deemed to be paid out of earnings of the taxable year available at the date when the dividend is payable, and to the extent that such earnings are insufficient it will be deemed to be a liquidation of paid-in capital or surplus. From the date when any dividend is payable the amount which the several stockholders are entitled to receive will be treated as if actually paid to them, whether or not it is so paid in fact, and the surplus and undivided profits, either of the taxable year or of the preceding years, will in accordance with the foregoing provisions be deemed to be reduced as of that date by the full amount of the dividend. Amounts paid to stockholders in anticipation of dividends, or amounts withdrawn by stockholders in excess of dividends declared, will in computing invested capital have the same effect as if actually paid as dividends. See also article 813, and see generally section 201 and articles 1541–1549."

In the determination of the amount of plaintiff's invested capital, the Commissioner of Internal Revenue applied article 858. As he interpreted plaintiff's dividend resolution, supra, its terms brought it squarely under that regulation. It declared a dividend, payable in cash or notes bearing 5 per cent. interest, at the election of the plaintiff, and fixed no date for payment. The Commissioner held that the amount of the dividend not actually withdrawn in cash from the plaintiff by the stockholders was borrowed capital, and as such was not to be regarded as invested capital. Assuming the applicability of article 858, the Commissioner was supported in so holding by article 813 of Regulations 45 (page 174):

"Art. 813. *Borrowed Capital; Amounts Left in Business.*—Whether a given amount paid into or left in the business of a corporation constitutes borrowed capital or paid-in surplus is largely a question of fact. Thus indebtedness to stockholders actually cancel-ed and left in the business would ordinarily constitute paid-in surplus, while amounts left in the business representing salaries of officers in excess of their actual withdrawals, or deposit accounts in favor of partners in a partnership succeeded by the corporation, will be considered paid-in surplus or borrowed capital according to the facts of the particular case. The general principle is that if interest is paid or is to be paid on any such amount, or if the stockholder's or officer's right to repayment of such amount ranks with or before that of the general creditors, the amount so left with the corporation must be considered as borrowed capital and be so treated in computing invested capital."

If the Commissioner's interpretation of the dividend resolution was correct, and articles 858 and 813 of Regulations 45 are valid, the ruling of the commissioner was entirely justified, and the invested capital of plaintiff for the year 1918 was properly decreased and its excess profits thus increased. But the plaintiff insists that the Commissioner has misinterpreted the resolution, and that article 858 is contrary to law, or at least inapplicable to the situation created by the declaration of the dividend in the instant case. By its interpretation the resolution declares a dividend payable at a future date, which was to be at the will of the company. It contends that article 858 treats only of dividends payable on demand, while the instant dividend was plainly not payable upon demand. It admits that, if the dividend was paid out of the 1917 profits, as declared in the resolution, the amount was properly deducted from its invested capital; but it points out, and correctly, as we think, that the profits from which dividends are paid are not determined by declarations of the company's directors, but by section 201(e) of the Revenue Act of 1918 (Comp. St. § 6336⅛b (e), which settled a theretofore vexed question by conclusively declaring that any distribution made during the first sixty days of any taxable year shall be deemed to have been made from earnings of preceding taxable years, and that any distribution made during the remainder of the year shall be deemed to have been made from earnings accumulated between the close of the preceding taxable year- and the date of distribution, to the extent of such earnings. Plaintiff admits that the cash payment and credit, amounting to $8,000, of January 31, 1918, and that payment of $2,000 upon note on February 25, 1918, were deductible from the 1918 invested capital, although not as of January 25, 1918, as they were paid during the first sixty days of the year; but it in-

sists that the balance of the dividend was not distributed until payment was made, and such payment was made when the cash was withdrawn from the company by the payment of the notes given to the stockholders on January 31, 1918, all of the notes being paid after the first sixty days of the year.

Were we to accept plaintiff's main proposition, that a dividend is never deductible until payment of it is actually made—which we do not—even so we should not be able to agree to its contention built upon that proposition, that the dividend was not deductible from the invested capital of 1918. The resolution of January 25, 1918, declared a dividend "payable in cash *or notes of the company bearing* 5 per cent. interest, at the convenience of the company." On January 31, 1918, it paid $8,000 by cash and credit, and issued interest-bearing demand notes to each stockholder, with one exception, for his exact share of the dividend. One of the stockholders was in Europe, and did not get a note for his share of the dividend, but it is admitted that he was upon the same plane as the other stockholders, and did not get it only because he did not demand it. Why this delivery of notes should not be considered a payment of the dividend we are unable to conceive. True, some testimony was offered which rather vaguely gives slight support to counsel's claim that the notes were not valid notes of the company, but were issued merely to enable the stockholders to realize that some time they would receive the sum. The gratification of holding a "dummy note," it seems to us, would not be great to a stockholder who had passed childhood. If the issuance of the notes was a mere gesture, how are we to explain the words, "payable in * * * notes of the company bearing 5 per cent. interest," in the dividend declaration? The best proof of the fact that the notes were valid is that they were actually paid, with interest. The stockholders may have agreed among themselves that they would not demand payment of them until it was convenient for the company to pay them, but no witness has been called who testified that the notes were not valid demand obligations given by the company in payment of the dividend. It is plain to us that they were so given. This conclusion practically disposes of the plaintiff's claim, upon a consideration of it upon the theory that the Commissioner was in error in the interpretation of the resolution of January 25, 1918, and that the invested capital of the company was not to be reduced at the time of the declaration of the dividend, but when it was paid. Under plaintiff's theory, the date of payment and of withdrawal of the assets would be six days later than the date fixed by the Commissioner, and under it plaintiff's invested capital would be increased by $89,325 for that period. The average invested capital for the entire year would be very slightly increased, and consequently the excess profits tax of plaintiff would be reduced almost to a negligible extent. But, as stated before, we do not accept the theory.

Plaintiff has urged that the court is precluded from considering January 31, 1918, as the date of the withdrawal of invested capital, as an admission of that defense would be permitting the defendant to "mend his hold," in violation of the principle laid down in Ohio & Miss. Ry. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693. In our opinion the "mending the hold" doctrine is not applicable to this defense in the instant suit. This is a personal action against the collector, not the Commissioner. The collector has taken no position prior to suit; but, even if he were in the position of the commissioner, the position of the latter has not misled plaintiff in any respect to his disadvantage. His contention that the date of the withdrawal of capital should be January 25, 1918, is not inconsistent with a payment on January 31, 1918. In the instant action, the plaintiff, to recover, must prove that an amount of money has been unlawfully collected from him, and he can under no circumstances recover more than was illegally collected.

[3] Notice of this contention of plaintiff is supererogation because our decision is not based upon payment of the dividend on January 31, 1918. Our examination of the dividend resolution has satisfied us that the Commissioner was correct in his interpretation of it, and that the withdrawal of invested capital was properly declared as of January 25, 1918, pursuant to article 858 of Regulations 45. The validity of that regulation is not open to serious question, in our judgment. It was promulgated by authority of Congress, and since its publication it has set forth the interpretation and practice of the Treasury Department in respect to several sections of the act of 1918, and, as such, it is entitled to great consideration. This is true of any regulation adopted pursuant to an act which placed the duty of enforcement of it upon the department making the regulation; but this particular regulation is entitled to even greater weight than an ordinary one, because Congress has several times re-enacted the provisions of the sections of the act of 1918 which the regulation was designed to interpret, and, under such circumstances, it has

the implied sanction of that body. This is an established rule of construction. See New Haven R. R. v. Interstate Commerce Commission, 200 U. S. 361, 26 S. Ct. 272, 50 L. Ed. 515; Copper Queen v. Arizona, 206 U. S. 474, 27 S. Ct. 695, 51 L. Ed. 1143.

We have concluded, from the testimony, that the amount of the dividend declared by the plaintiff company was payable on demand, and was borrowed capital, since the declaration of the dividend on January 25, 1918, and that the amount of it, $89,325, was not a part of plaintiff's invested capital for the year 1918, after January 25, 1918, under the provisions of the Revenue Act of 1918, § 201(e). The consequence of this conclusion is that the judgment must be entered for the defendant.

Let an order be drawn in accordance with this opinion.