### KEEFE v. MOSKIN STORES, Inc.

#### No. 1314.

Municipal Court of Appeals ·
District of Columbia.

Submitted Feb. 24, 1953.

Decided March 20, 1953.

Rehearing Denied April 28, 1953.

John B. Cullen, Washington, D. C., for appellant.

Joseph J. Malloy, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Moskin Stores sued Keefe, a former store manager, for shortages of cash and merchandise. The claim was based on a written contract under which Keefe was to be liable for such shortages unless he furnished proof "that the deficiency in the said merchandise or loss of cash referred to, was caused by the theft, larceny or acts of persons, other than Employee or other than persons hired or employed by or in or about the business of the Employer." The validity of the contract was not challenged in the trial court nor is it questioned here. After a trial without a jury judgment was entered for plaintiff for $1607.98.

Bringing the case here for review defendant says in his brief that he "does not base this appeal on errors of law or procedure * * * but he does make this appeal on the court's failure to consider the testimony as presented." He assigns two errors: (1) Error in overruling a "motion to amend the finding or in the alternative for a new trial." (2) Error in entering judgment for the plaintiff. In essence these constitute a challenge to the correctness of the decision on the facts presented.

The trial was lengthy and the evidence was developed in great detail and with more than a little repetition. The transcript is full of charges, countercharges and denials. Defendant was employed as a manager of plaintiff's clothing and jewelry store. Shortly after defendant entered upon his duties, plaintiff became dissatisfied with his services and sent Kreisberg, a district supervisor, to Washington to terminate the employment. Feeling that the notification was ineffectual, defendant resisted the efforts of Kreisberg to terminate his employment. He refused to be relieved of his duties and would not participate in the taking of the usual inventory. A few days later, on a Saturday, Kreisberg engaged a locksmith to change a lock on the front door, which provided the only entrance to the store. This was done in the presence of a policeman to prevent interference by defendant. However, Kreisberg did not notice that there was a second lock at the top of the door. So after the one lock was changed, Kreisberg had a key for one lock and defendant retained a key to the top lock.

Much of the controversy centers around the disposition of the store's cash on that evening, which was subsequently missing. There was no question that defendant handled the money and counted it but there was a dispute as to whether Kreisberg had also counted the money. A witness for defendant testified that she saw Kreisberg register the money on an adding machine as the denominations were called to him by defendant during the accounting. This Kreisberg denied, insisting that his only knowledge of the amount was dependent on a statement by defendant who then placed the money in envelopes. These in turn were placed in a box and defendant testified that he then put the box into the safe. Kreisberg denied that he actually saw defendant put the money in the box or put the box in the safe. He admitted that defendant turned and appeared to be putting something into the safe. Much was made over whether or not the layout of the office was such that one in a position as though he were putting something into the safe would totally block a view into the safe by anyone else. But the evidence on this was highly conflicting.

When the store was closed that evening Kreisberg locked the changed lock to which he had a key. A few minutes later defendant locked the lock at the top to which he had the key. Kreisberg and the incoming manager returned to the store the following day, Sunday, but according to Kreisberg, discovered the second lock for which he had no key and they did not attempt to enter the store.

Sometime Sunday someone broke the center lock on the door. This was discovered late Sunday night. Defendant was notified by the police and he in turn notified Kreisberg. Both proceeded to the store and observed that the one lock had been smashed but the other had not been touched. It is not at all clear whether the second lock at the top of the door could have been turned by hand from the inside after the first was opened or whether an entry could have been forced without breaking the second lock. The parties are agreed that on that occasion the safe appeared to be undisturbed although there was some evidence that some furniture in the store was disarranged. It was not until the following morning that the loss of the money was discovered and the testimony is very conflicting concerning the manner in which the loss was brought to light. There was evidence that besides defendant, the combination to the safe was not known by Kreisberg or anyone who worked in the Washington office. However it was on file in the home office in New York City. Defendant himself testified that he had refused to give the combination to Kreisberg.

On Monday morning Kreisberg informed plaintiff's home office in New York City of his difficulties. That afternoon Lazarus, an officer of plaintiff, came on the scene. The police were again called in and with the parties went for a hearing before an Assistant United States Attorney. That official was called as a witness and testified that it was his conclusion that the events indicated what is known in police parlance as "an inside job." Otherwise, what was said at the hearing is as much in doubt and dispute as the other aspects of the case.

Defendant and Lazarus and others began an inventory of the store's merchandise on that Monday. Again, the evidence is conflicting concerning the completion of this inventory and whether it was merely a continuation of one previously begun by Kreisberg. According to Lazarus, defendant refused to sign the inventory because defendant claimed that plaintiff owed him another week's salary.[1] But defendant insisted that he refused to sign the inventory because he doubted its accuracy.

The results of this inventory were compared with that taken when defendant first entered on duty in the store and with the reports of sales and other records maintained by plaintiff and it was alleged by plaintiff that several hundred dollars' worth of merchandise, including suits and jewelry, had not been accounted for by defendant. The originals of these records were in evidence and also a summary of the records which purported to show only the missing items and their sale prices.

We have recited the facts at some length, to demonstrate the difficulty of defendant's position on this appeal. By his general statements of error his contention is shown to be merely that the judgment of the trial court was contrary to the evidence. He asks us to reverse because of the trial court's "failure to consider the testimony as presented." But this we could only do by reading out of the case the extensive testimony offered by plaintiff, or assuming that only defendant's evidence was worthy of belief. Obviously such is no part of our rightful function.

Neither under the statute prescribing our power of review, Code 1951, 11–772(c) nor under the decided cases (see DuBose v. Drummond, D.C.Mun.App., 95 A.2d 57, and cases there cited) do we have any right to weigh evidence or render decisions on factual disputes. The parties made a contract which has at no stage been questioned as to validity. Admittedly that contract held defendant to a strict accountability for the monies and merchandise entrusted to his care. There was substantial evidence on which to predicate a finding that defendant had breached that contract.

A part of defendant's argument is stated thus: "certainly the employment contract does not bind the defendant after he is discharged." But even if we assume that a discharge of defendant was accomplished by Kreisberg the first time it was attempted,

1. Defendant made no counterclaim for salary and the question is not before us.

it is quite another thing to say that he was immediately released from the obligations imposed by the contract. It should be self-evident that defendant was not relieved of those obligations until they could be determined; and it was defendant's own conduct which hampered their determination. He is not only refused to recognize the authority of Kreisberg, but he continued to supervise the employees and to exercise other managerial functions until Lazarus arrived.

Moreover, defendant's insistence that he was still the manager estops him from denying his obligations under the employment contract. The applicable principle was long ago stated by the Supreme Court, and has since been repeated many times: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." Ohio and Miss. R. Co. v. McCarthy, 96 U.S. 258, 268, 24 L.Ed. 693.

Affirmed.