# Montooth Borough, Appellant, *v.* Brownsville Avenue Street Railway Company.

*Street railways—Boroughs— Contract—Performance—Impossibility of performance.*

A street railway company which has entered into a contract with a borough to build a railway on a street, is not relieved from its contract by reason of the fact that for a distance of 750 feet, the company was confined to the use of about eleven feet only in width of the highway;

and this is especially the case where the evidence is not conclusive that the railway could not have been constructed and operated on the street.

*Contract—Performance—Impossibility of performance.*

Impossibility of performance of a contract is in general no answer to an action for damages for nonperformance.

Impossibility of performance, whether such impossibility arises through the fault of the promisor or not, will not constitute a valid defense to an action for a breach of a contract. If the promisor makes the promise conditional upon its continued possibility, then the risk is assumed by the promisee and he loses his right of action, if the contingency arises. But if the promisor makes the promise unconditionally, then he assumes the risk, and as a general rule he cannot set up the impossibility of performance as a defense to an action by the promisee.

Argued Feb. 4, 1903. Appeal, No. 184, Oct. T., 1902, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1901, No. 316, on verdict for defendant in case of Borough of Montooth v. Brownsville Avenue Street Railway Company and the Mercantile Trust Company of Pittsburg, Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit for breach of contract to construct a street railway. Before BROWN, J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*H. I. Riley,* for appellant.

*William A. Challener,* with him *Homer L. Castle* and *Clarence Burleigh,* for appellees.

OPINION BY MR. JUSTICE POTTER, May 25, 1903:

This is an action to recover upon a bond given by the Brownsville Avenue Street Railway Company, to the borough of Montooth, to secure the construction of a street railway upon West street in the said borough. The consent of the borough had been given by an ordinance dated September 21, 1900, which was formally accepted by the street railway company

upon September 26 following. Its provisions required the filing of a bond conditioned for the faithful performance of all the terms of the ordinance and stipulated that the bond was to be forfeited, and the sum of $2,000 paid as liquidated damages to the borough, if the street railway was not completely built and in operation on or before the first day of October, 1901. The bond thus required was given, and upon it the present action was brought. The trial judge found that the ordinance and its acceptance created an agreement between the borough and the railway company. And that by the terms of this agreement the company received a valuable right, for which as a consideration it was to construct the line, and grade and fill in with broken stone, and pave the portions of West street referred to. He further found that the entire failure of the railway company to perform its agreement had occasioned a loss to the borough, which was not to be measured by any ordinary standard, and that the damages as agreed upon and liquidated by the parties, should be considered as the proper measure of compensation. But the learned judge was of opinion that the railway company had a good defense upon the ground of the insufficiency of the width of the highway. It appeared from the testimony that for a distance of about 750 feet the width of the portion of West street in the borough was not more than eleven and one half feet, and the court held as a matter of mathematical certainty, and therefore of law, that this was not sufficient to admit of the safe construction and operation upon it of a line of street railway. Being thus of the opinion that it was impossible for the company to perform its contract, he directed a verdict for the defendant.

But, " impossibility of performance is, in general, no answer to an action for damages for nonperformance : " 3 Addison on Contracts, * 1195.

" If one for a valid consideration promises another to do that which is in fact impossible, but the promise is not obtained by actual or constructive fraud, or is not on its face obviously impossible, there seems no reason why the promisor should not be held to pay damages for the breach of the contract; not, in fact, for not doing what cannot be done, but for undertaking and promising to do it : " 2 Parsons on Contracts, * 673.

The general rule is thus stated in a discussion upon the sub-

ject of Impossibility of Performance as a Defense, in 12 Cent. L. J. 4: " Impossibility of performance, whether such impossibility arises through the fault of the promisor or not, will not constitute a valid defense to an action for a breach of the contract. If the promisor makes the promise conditional upon its continued possibility, then the risk is assumed by the promisee and he loses his right of action, if the contingency arises. But if the promisor makes the promise unconditionally, then he assumes the risk, and as a general rule he cannot set up the impossibility of performance as a defense to an action by the promisee."

It is the duty of the party making the promise, to ascertain, at the time, whether or not performance is possible. If he neglect to inform himself it is at his peril.

But it is by no means clear that the evidence in this case justifies the conclusion that the construction and proper operation of the street railway upon West street, within the borough limits, was an impossibility.

The narrow portion in which the difficulty lay, extended for a short distance only; and it does not seem to us that the problem which it presented was one to baffle the resources of the builders of modern street railways, even if for a distance of 750 feet they were confined to the use of about eleven feet in width of the highway.

The borough engineer testifies positively that it is feasible to build and operate a line of railway over the street in question; and he bases his statement upon the fact that he had actually constructed another line of street railway, which in one place had only a ten-foot right of way. The argument against the sufficiency of the width for the purpose is based upon the supposed necessity for cutting off a portion of each side of the street for a sidewalk. But it does not follow that any such exclusive use of the street at that point will be required. As the borough authorities have granted the use of that street to the company, to build its street railway upon, it is to be presumed that other provisions, by means of widening the street or otherwise, will be made for a sidewalk if it be needed. At the present time, the street does not seem to be built upon, and is but little more than a country road, but if the public needs require it, the street can be widened, either by the borough in

the usual way, or the railway company can secure additional space by the purchase of ground from the abutting owners.

The mere matter of additional expense to the company is no sufficient excuse for failure to comply with its contract.

The argument for the appellee proceeds entirely upon the assumption that the company was not bound to make any effort to secure additional space, which might be made available, if needful to enable it to build the road upon the right of way granted by the borough. We do not regard this position as tenable. The company knew the situations and the conditions existing upon the ground, or at least it certainly might have known them when it made the agreement.

It is fair to presume that at that time the company had in view a plan which would enable it to use to good advantage the privileges granted to it by the borough over the portion of West street within its limits.

The testimony shows that West street was forty feet in width, and while at the narrow part, the portion of it within the borough was only ten or eleven feet in width, yet the remainder of the highway was in existence at that point and was open for the use of the public. Nothing appears in the evidence to show that the railway company could not have obtained the right from the proper authorities, to make such auxiliary use of the remaining portion of the highway as would permit of the safe and comfortable operation of such an instrument of public convenience as a street railway. An inspection of the testimony makes it apparent that various other expedients might have been effective. For instance, if a double line of poles were thought necessary, upon the 750 foot portion, permission might have been obtained to set them outside the line of the street, and upon either side. But even if confined to the limit of space which was clearly available it seems that other methods were open to adoption, which would have made compliance possible.

It does not appear from the evidence that double lines of poles are absolutely necessary, as instances were cited in which single lines of poles to support overhead wires are in practical use; it seems also that by means of an underground conduit, the power can be conveyed, and the system successfully operated without the use of any poles at all.

As we read the evidence, we cannot avoid the conclusion that there was sufficient in it, to justify a finding that it was possible for the railway company to have complied with its agreement to build its line in accordance with the terms of the ordinance.

The third specification of error is therefore sustained. The judgment is reversed, and a venire facias de novo is awarded.