GOODMAN et al. v. PURNELL et al.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

No. 218.

1. CORPORATIONS (§ 439*)—SALE OF ASSETS—VALIDITY—ABILITY TO PERFORM.
A contract made by the owners of all of the stock of a manufacturing corporation to sell the same and to pay all of the debts of the corporation is not void, as incapable of performance, because it also provides that the purchasers shall take and pay for the product and materials on hand owned by the company, the money to go to the sellers; there being no one interested in the property except the parties to the contract after payment of the debts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1774; Dec. Dig. § 439.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CONTRACTS (§ 316*)—WAIVER OF BREACH—CHANGE OF POSITION.**

A party to a contract, who refused to perform the same on grounds expressly stated, cannot, when sued for the breach, set up different grounds, where the facts were equally well known to him when he first stated his grounds.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1483½; Dec. Dig. § 316.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by J. Hurst Purnell and others against Patrick Goodman and Jeremiah J. Kennedy. Judgment for plaintiffs, and defendants bring error. Affirmed.

This cause comes here upon a writ of error to review a judgment in favor of defendants in error, who were plaintiffs below. The judgment was entered upon a verdict, which was directed by the trial judge at the close of the case; exception to such direction being duly reserved. The facts sufficiently appear in the opinion.

Foley, Martin & Nelson (John F. Foley and Frank A. Spencer, Jr., of counsel), for plaintiffs in error.

Everett, Clarke, Benedict & Ward (Edward G. Benedict, of counsel), for defendants in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The action is brought upon a written contract between the parties, executed January 14, 1908. The plaintiffs, described therein as vendors, in consideration of $20,000 agreed to sell, assign, transfer, and deliver to defendants, described therein as vendees, "the entire capital stock outstanding, amounting to $35,-000 par value of the Empire Iron & Metal Company, a corporation incorporated under the laws of the state of New York." They further agreed, in delivering the stock, to pay all debts now due by the said Empire Iron & Metal Company, to the end that the vendees shall be saved harmless and indemnified from any debts due by the company up to and including January 14, 1908. The vendees agreed to pay $1,000 in cash upon the execution of the agreement, $9,000 in cash on January 21st, and to give two notes, for $5,000 each, dated January 14th, payable, respectively, four and eight months after date, with interest at 6 per cent. per annum; said notes to be secured by a first mortgage on the plant of the company, located at Sewaren, N. J., and further indorsed by the vendees individually. They also agreed to pay, on or before January 24th, $20 per ton for every ton of sash weights that the metal company delivers to the vendees. The vendees also agreed to assign all outstanding book accounts as a further consideration, and to pay to the vendors the cost price of all raw material now on hand.

The $1,000 was paid on execution. On January 15th one of the defendants was taken down to the plant at Sewaren by plaintiffs and introduced to the foreman as the purchaser of the business. He went all over the plant, examined it, and discussed its requirements with the

foreman. On January 21st the parties met. At that time the plaintiffs owned all the stock outstanding, 350 shares, and tendered to vendees the certificates therefor, properly indorsed. Defendants said that they were not just ready at that time to close the deal; that they were not sure of the debts of the company from the books. The debts were actually between $9,000 and $9,500, and plaintiffs had expected to pay them with the $9,000 cash which defendants were to pay. The spokesman for plaintiffs then told defendants that plaintiffs would allow them to pay out of the $9,000, if they so desired, all the debts of the company, besides which plaintiffs would give them a bond for $5,000 to protect them against any loss—an indemnity bond. Defendants asked to see the minute book, and a further interview was arranged for January 23d. In the interim plaintiffs procured a bond for $5,000 in favor of defendants, and the parties again met on the 23d; defendants' counsel being present. There is testimony that in 1906 the number of directors was reduced from nine to five; that before the 23d two of them resigned; that at the meeting of the 23d the three remaining directors attended, and stated that they were prepared to pass any resolutions which might be requested by defendants. In the view we take of the case, however, such testimony was immaterial.

At this second interview it was again stated that defendants might themselves use the $9,000 to pay the debts and the $5,000 bond was tendered. Counsel for defendants stated that he was not satisfied until he had gone more fully through the minutes of the company and the conditions of the contract. This interview terminated without result. The minute book, stock certificate book, and some loose sheets were turned over to defendants. The next day, January 24th, there was a further interview, at which counsel for both sides were present. Counsel for defendant then took the position that plaintiffs had as individuals made a contract which they could not carry out; that they could not sell material which belonged to the metal company. Nothing came of this interview. The details of these interviews as above set forth are found in plaintiffs' evidence; but, although one of the defendants and their counsel both testified, none of them were controverted. On January 31st defendants wrote to plaintiffs, asserting that the agreement "was wholly void and unperformable from the beginning," and demanding the return of the $1,000. The sole ground assigned in the letter for this repudiation of the contract is that it was manifest that plaintiffs—

"were as a matter of fact and also of law without power or legal authority to perform any of the essential covenants and conditions on their part to be performed," since the agreement "contemplated and provided for the sale and delivery of all the capital stock and *property, rights, privileges, and franchises* of the Empire Iron & Metal Company."

At no time did defendants question the amount of outstanding stock, nor the ownership thereof by plaintiffs, nor the sufficiency of the stock certificates and transfers thereon, nor the form or sufficiency of the bond of indemnity; nor did they make any suggestion that they had been deceived as to the extent or value of the property owned by

the corporation, or as to the nature and extent of the business done by it.

This action being brought, defendants averred in their answer that prior to and at the time the contract was executed plaintiffs represented that the corporation was engaged in an active, prosperous, and profitable business; that it was receiving, and for a long time past had received and filled, a considerable number of orders for large quantities of its output, and that it had made and was then making a great number of sales of a considerable quantity of its material, upon which considerable profit had been and was being realized. These representations defendants averred were false, in that the corporation was carrying on a very small business, receiving scarcely any orders, and was conducted at a loss.

[1] The objection set forth in the letter of January 31st, viz., that the contract was incapable of performance, because plaintiffs could not legally carry out its terms, was raised on the trial and has been argued here. It is wholly without merit, and is predicated on a misreading of the contract. Plaintiffs did not agree to sell and deliver to defendants "all the property, rights, privileges, and franchises of the Empire Metal Company." The citations in the brief, supporting the proposition that a conveyance of all the assets of a corporation is not within the power of the stockholders, without formal action at a meeting held for that purpose, are inapplicable. They agreed to convey only the entire outstanding stock. This they could convey, being the sole owners of it, and they duly tendered it. As to the sash weights on hand, which were the property of the company, the contract provides merely that the vendees shall pay $20 per ton "for every ton that the Empire Metal Company delivers" to them. The Empire Metal Company did make deliveries; the foreman taking his instructions from the directors, no one suggests that the price named was not the market value. That the moneys paid for these sash weights, upon delivery by the company, were to be paid to plaintiffs, is a matter as to which only its creditors and stockholders had any right to object. Since plaintiffs were to pay all the debts, there would be no creditors, and the stockholders were the plaintiffs themselves.

[2] At the trial defendants undertook to make proof of the misrepresentations alleged in the answer. The court refused to admit the testimony, for the reason that, when they deliberately placed their repudiation of the contract on the single ground set forth in the letter, they thereby waived all objections as to misrepresentations, and should not be allowed after suit was brought to bring up other grounds, not theretofore brought to plaintiffs' attention. It may be noted that there is no suggestion that the alleged misrepresentations had been subsequently discovered, nor that defendants were not as fully informed as to the condition of the plant and the business when they repudiated the contract as they were on the day of the trial. We cannot say what might have happened, had defendants on January 31st objected to carrying out the contract for the reason that they believed the value of the business had been misrepresented. This is all they claim now, for the averment in the answer that the business was be-

ing carried on at a loss, instead of at a profit, is on information and belief only. Plaintiffs might have undertaken, by production of the books and otherwise, to convince defendants that they were misinformed, and might have been successful in such undertaking. By insisting only on the single highly technical ground that the contract was "wholly void and unperformable from the beginning," they quite naturally led plaintiffs to assume that future efforts to carry out the agreement would be fruitless. The ruling of the trial court is abundantly sustained by the decision in Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693, where the court says:

"Where a party gives a reason for his conduct and decision touching anything involved in the controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is estopped from doing it by a settled principle of law."

There is no dispute as to the measure of damages. The few exceptions as to evidence and requests to charge are practically disposed of by our dispositions of the objections first above considered.

The judgment is affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes