GOTTESMAN et al. v. CANADA, ATLANTIC & PLANT S. S. CO., Limited.

(District Court, E. D. New York. June 14, 1919.)

1. SHIPPING ☞104—BREACH OF CONTRACT OF AFFREIGHTMENT—DEFENSES.

In a suit for breach of contract to carry cargo, respondent cannot defend on the ground of vis major, of which there is no proof, merely because libelant claimed it in excuse of his breach of contract with the consignee.

2. SHIPPING ☞104—BREACH OF CONTRACT OF AFFREIGHTMENT—DEFENSES.

Where the defense pleaded in a suit for breach of a contract to carry cargo is a denial of the breach, respondent will not ordinarily be allowed to change his ground to excuse the breach.

In Admiralty. Suit by Mandel Gottesman and David S. Gottesman, copartners doing business as M. Gottesman & Son, against the Canada, Atlantic & Plant Steamship Company, Limited. Decree for libelants.

Kirlin, Woolsey & Hickox, of New York City (M. W. Maclay, Jr., and Victor W. Cutting, both of New York City, of counsel), for libelants.

Bullowa & Bullowa, of New York City (Horace L. Cheyney, of New York City, of counsel), for respondent.

CHATFIELD, District Judge. The libelant contracted with a party in France to deliver 200 tons of wood pulp from the United States. He then secured the carriage of this wood pulp by the steamer Halifax, which was to sail from the port of New York the week of October 5, 1918. The Halifax was not allowed to sail at that time, and her license to carry freight was withdrawn, as she was needed for

government service. The libelant demanded that the owners of the Halifax fulfill their contract, and bad feeling immediately resulted, inasmuch as the libelants assumed that the respondents were seeking to get out of their contract to carry pulp and to devote such cargo space as they had at their disposal to a more remunerative service. The respondents (the owners of the Halifax) at all times insisted that the libelants had defaulted in their part of the contract, by failing to obtain an export license from the United States authorities. It appeared upon the trial of the action, from correspondence with the office man who represented the respondents at that time, that the libelants had submitted an export license which the search of the government records in Washington had not revealed to the respondents; that this export license had been submitted to the respondents, and had been returned during the time that the Halifax was withdrawn from service. The Halifax was finally allowed to make a trip on November 20, but did not take the wood pulp, and the respondents never attempted to take this pulp on any other steamer controlled by them. The libelants then brought an action for breach of contract, and in the pleadings alleged that they had suffered damages for increased freight charges, loss of profits, handling, etc. It now appears that the pulp was never shipped to France, so that the increased freight charge evidently was not an item of damage, as the freight charge was saved. The item, loss of profits, may have been largely increased, if the goods were sold at a loss in this country, or may have been slight in amount if sold here at a price, which, less the freight charges, fairly represented the contract price for which they were to be sold in France.

[1] But these matters have little to do with the present issue, and the inconsistency in the pleading is explained by the date at which the allegations were made. The case came to trial, and the claimant was compelled to abandon the defense that no export license had been obtained, the defense that there was no refusal to carry by a subsequent steamer, and also the defense, which had originally been interposed, that the Halifax had no transatlantic license. It was evident that these defenses were unsupported by testimony, in view of the correspondence which was put in evidence. But during the course of the litigation, the respondents learned that the libelants had represented to the party with whom they were under contract in France, that the contract to carry the wood pulp had been made impossible of performance by vis majeur; that is, by the refusal of the French High Commission to allow cargo space to France to be used for other freight than that considered necessary by the commission.

This statement was based upon the representation of the respondent that the Halifax, even when she finally was allowed to sail, and the Bedek, which carried some of the cargo of the Halifax in the meantime, were allowed to carry war supplies only. The respondents then made a motion to amend their answer and to add the defense of vis majeur. This motion was granted on terms, the determination of which was reserved for the trial. The respondents proceeded with the taking of testimony under the proposed amendment to their an-

swer, but have been unable to produce testimony showing that either the Halifax or the Bedek would not have been allowed to carry the wood pulp if the respondents had been willing to undertake to do so. The respondents definitely breached their contract by returning the export license to the libelants, when it appeared that the Halifax would not be allowed to sail, and by thereafter refusing to deal with the libelants, upon the mistaken supposition that no export license had been obtained. In this way the respondents lost their opportunity to protect themselves, through the action of the French High Commission, if this commission would have exerted that governmental power which has been referred to, when exercised, as vis majeur. This undoubtedly would be a defense, if proven, and the libelants have recognized this by obtaining a cancellation of their own contract for that reason, but the respondents have no proof that this force was exerted beyond the fact that the libelants have in a sense admitted its existence by pleading it themselves in excuse of their own default.

The situation suggested by the proposed defense is analogous to that where a person is obligated on certain conditions, and ultimately the facts show that the conditions never occurred, although both parties had been proceeding on the assumption that they had occurred. In such case no contract resulted, as both the parties were laboring under a mistake. In some instances a charge of crime may be found to have been based upon an imaginary act of commission, when the essential elements of the crime require the existence of certain conditions which afterwards prove to have been absent. For instance, two men could not commit a burglary, in the sense of breaking in and entry, if they crawled into what was supposed to be the cellar space of a house and found that, in the darkness, they had merely crawled into an empty excavation. But in the case at bar the respondents still persisted in their reliance upon the default of the libelants until some testimony had been taken in court. They never urged the affirmative defense until such a defense proved to be needed. The respondents were unable to produce any testimony in support of that affirmative defense, other than the suggestion that the libelants themselves had made use of the same defense in extenuation of their own breach of contract. Nor is a satisfactory showing made that such evidence could ever have been produced, beyond the negative inference, from the ideas of all parties concerned, that only war supplies were in fact shipped. Such a situation does not sufficiently make out an affirmative defense in excuse of a plain breach of contract.

[2] The party who suggests that he should be excused for breach of contract, and thus seeks to change his ground from a denial that he has ever broken that contract, cannot be allowed to change his position in the ordinary case. Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Goodman v. Purnell, 187 Fed. 90, 109 C. C. A. 408; Taenzer & Co. v. Chicago, R. I. & P. Ry. Co., 191 Fed. 543, 112 C. C. A. 153; Polson Logging Co. v. Neumeyer, 229 Fed. 705, 144 C. C. A. 115.

The present case is unusual, and yet when this change of defense was allowed, it was predicated upon an offer of substantiation by definite proof, and that has been utterly lacking.

If the respondents are able to show mitigation of damage to the extent that this defense has served the purpose of relieving the libelants, whether the defense is founded upon fact or not, they may do so, but the excuse offered when the respondents refused to perform the contract has not been justified, and the defense of vis majeur is not made out. The libelants may have a decree.