**WALL GROCER CO., Limited, v. JOBBERS' OVERALL CO., Inc.**

(Circuit Court of Appeals, Fourth Circuit.  January 12, 1920.)

No. 1742.

1. Sales ⊙⇒52(5)—Evidence held to establish contract for sale of merchandise.

Evidence *held* to establish a contract for sale of merchandise, which the seller was not justified in repudiating after part of the order had been shipped.

2. Sales ⊙⇒176(3)—Ground for repudiation cannot be shifted after suit.

A defendant, which refused to complete shipment of an order for merchandise on the ground that there was no acceptance of the contract by plaintiff which made it binding, cannot shift its ground after suit by claiming that specifications of goods to be shipped were not furnished in time.

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action by the Wall Grocer Company, Limited, against the Jobbers' Overall Company, Incorporated.  Judgment for defendant, and plaintiff brings error.  Reversed and remanded, with instructions to grant a new trial.

Leon Goodman, of Lynchburg, Va. (Harper & Goodman, of Lynchburg, Va., on the brief), for plaintiff in error.

T. G. Hobbs, of Lynchburg, Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge.  Plaintiff in error, plaintiff below, a Louisiana corporation, is a wholesale dealer at Lake Charles, in that state. Defendant, a Virginia corporation, is a manufacturer of overalls at Lynchburg.  Some time in May, 1917, a representative of defendant, one Berry, visited plaintiff's place of business at Lake Charles to solicit an order, and had an interview with Mr. Holloman, the secretary and treasurer of the company.  As Mr. Wall, the president, was away on a vacation, Holloman declined to purchase a line of goods which they had not before handled.  The result was that Berry left with him a written contract, with the understanding that the matter would be taken up and decided on Wall's return.  This contract or proposal was for 500 dozen overalls at $11 a dozen, f. o. b. factory, "deliveries to December 20th."  Under date of June 4th, and again on June 14th, Berry wrote Holloman, urging acceptance of the offer, and arguing that it would be greatly to plaintiff's advantage.  In the second letter he said:  "We will give deliveries as late as December 30th."  It does not appear that either of these letters was answered. On July 27th, defendant's president, Mr. Barrow, sent a letter to plaintiff, which virtually assumed that the latter had accepted the offer. As Wall was still absent, Holloman returned the letter with a pencil notation to the effect that no order had been given.  Thereupon Barrow wrote again, on the 3d of August, saying that his previous letter

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

referred to "the conditional order of 500 dozen entered by us some time ago," and adding, after statement of advance in price:

"If you do not want these goods, we will be very glad indeed to cancel the same, and will appreciate instructions as to what you desire us to do."

Then, on the 13th of August, shortly after Wall's return, he wrote defendant the following:

"Replying to your letter 3d, we will forward you specifications for part of the contract shortly. Then later on for the balance."

That this was regarded and treated by defendant as a full acceptance of its offer, and therefore as closing the contract, is evident from the acknowledgment promptly sent on the 18th, as follows:

"We thank you for your letter of the 13th and are pleased to note that you will send us specifications to cover contract of 500 dozen in the near future.

"We would appreciate it very much if you would give us this information in the next few days, as we are so rushed with business that we might be a little delayed if you should send an order for immediate shipment.

"We certainly congratulate you on your decision to take these goods out, as you have, a profit already of $2.75 on your contract, as our price to-day on No. 940 is $13.75."

August 30th defendant wrote another letter to plaintiff, naming prices and terms for delivery during the first four months of 1918, and soliciting an additional order at those prices. Before this letter was received and under date of September 1st, plaintiff acknowledged receipt of the August 18th letter, and directed the shipment of 180 dozen overalls, for which specifications were given. In response defendant wrote on the 4th:

"We are in receipt of your letter of September 1st, and are rushing you to-day [describing the goods], applying same on your contract."

The balance of the letter is an invitation to plaintiff to purchase 500 dozen more, at prices stated, "to come out between this date and December 30th."

[1] It cannot be doubted that the foregoing correspondence discloses a definite and binding contract, as well as its partial performance, and we are not persuaded that anything afterwards occurred which relieved defendant of its obligation. On the 5th of October, replying apparently to some inquiry of plaintiff in regard to freight rates to Lake Charles, defendant wrote the desired information, and also said:

"We kindly ask that you send us detail and shipping instructions on the balance of your contract."

The letter closes with another solicitation for an order at $13.75 per dozen, "for delivery next spring." Plaintiff replied on the 8th as follows:

"Your letter 5th received, and, on account of our taking on overalls late, everybody had bought at the cheaper price, and are stocked. So we will not be able to do much until the retailers buy again. It seems they are an article that is booked ahead to the retailer, which we did not know."

Though badly expressed, the apparent intent of this letter was to state briefly the plaintiff's reasons for not giving a second order, and for not then being ready to send specifications for the balance of the contract. It will be observed that defendant's letter of the 5th contains only a request "for detail and shipping instructions," and conveys no intimation that failure to comply promptly, or within any particular time before the 20th of December (the last day for delivery), would be claimed by defendant to operate as a release from its engagement. The reply of the 8th is equally devoid of any indication that plaintiff did not regard the contract as in full force, or had any idea that defendant desired its abrogation. Indeed, in view of the tenor of that reply, the fact that defendant did not renew its request, or make any response to the letter, warranted the plaintiff in assuming that defendant assented to a deferred date for sending the specifications. We are quite unable to see that these two letters affected in the least the contract relations of the parties, or furnished defendant with any excuse for declining to carry out its agreement.

Thus the matter stood without further communication by either party until the 6th of December, when plaintiff wrote the following:

"We would like to have the shipping time extended on the balance of our contract, if agreeable to you. If not, advise us, and we will forward specifications."

To this defendant replied on the 10th as follows:

"Your letter of December 6th. Owing to the fact that we did not receive confirmation of the order placed with our salesman the last of August, we have not made arrangements to complete the entire order. We did ship you 180 dozen several months ago, but, not hearing from you further, we cleared this order from our records several weeks ago. In fact, we have not heard from you since your letter of August 13th, in which you stated that you were unable to forward specifications for any part of the order at that time."

Without comment on the strangely erroneous statements in this letter, we pass to the following response, sent by plaintiff on the 15th, and received on the 18th:

"We were very much surprised to receive your letter of December 10th; you must not have looked closely into the facts. We hold your contract for 500 dozen, to be taken out by us by December 30th. You have already shipped on this contract 180 dozen, and you may ship us at once 320 dozen (assorted sizes) men's blue buckle overalls. Look this up, and you will see we are right. Please route the shipment via New Orleans, care Southern Pacific."

This direction was repeated by telegram sent and received on the 18th. Defendant replied the same day, acknowledging receipt of plaintiff's letter and telegram, and in substance refusing to make further shipments for the reason that it had not contracted to do so. It did, however, "as a special favor," offer to let plaintiff have the 320 dozen at $18 a dozen, the price to which its overalls had in the meantime been advanced. Later in December, as appears, and again in January following, plaintiff renewed its demand for a performance of the contract, and defendant again refused. Thereafter this suit was brought. The parties stipulated that the case be tried by the court without a jury, and also stipulated the amount of damages to

be awarded, if the court held that plaintiff was entitled to recover. The court decided in favor of defendant, on grounds presently to be considered, and plaintiff comes here on writ of error.

[2] We have already said, and need not repeat, that the correspondence above set forth, particularly plaintiff's letter of August 13th and defendant's reply on the 18th, evidences a mutual agreement by which both parties were bound. The learned judge below held that this was a conditional agreement, the condition being that plaintiff would furnish specifications within a reasonable time prior to December 20th, and that its failure to do so operated to release defendant from obligation. We are unable to concur in this view. In the first place, and this of itself seems sufficient, the defendant did not, in its letters to plaintiff, assign any such reason for refusing performance, nor does its testimony at the trial set up any such defense. On the contrary, it has insisted from first to last, as it argues here, that plaintiff never "confirmed the order," and therefore there was never a binding contract. Plainly, as we think, defendant cannot now shift its ground for the purpose of evading liability. As the Supreme Court said in Railway Co. v. McCarthy, 96 U. S. 258, 267 (24 L. Ed. 693):

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

In this connection it may be noted that defendant's request for shipping instructions "on the balance of your contract" is dated the 5th of October. Yet only seven days later, more than two months before the time for delivery would expire, and without notice to plaintiff then or afterwards, defendant placed on what it describes as "the conditional order given Berry" the written indorsement, "Canceled October 12, 1917." It is impossible to believe that this was done because of the nonreceipt of specifications which had been asked for barely a week before.

Moreover, as appears to us, the time for sending specifications prior to December 20th was not of the essence of the contract, nor was it so regarded by defendant. A few days' notice was all it needed. The overalls in question were standard sizes of a standard article, which defendant manufactured in large quantities. It shipped the 180 dozen in September, though "rushed with business," on the day the order was received; and, what is more to the point, it made no attempt to show on the trial that it did not have the 320 dozen in stock on the 18th, when the specifications came, or that it could not have shipped them as soon thereafter as the 20th. Even if some further time was in fact required, as may have been the case, the delay in sending instructions would perhaps have excused a reasonable delay in shipping the goods; but it did not excuse a repudiation of the contract. Taking all the circumstances into account, we are of opinion that no defense to the suit was made out, and therefore plaintiff was entitled to recover the stipulated damages. The judgment will be reversed, and the cause remanded, with instructions to grant a new trial.

Reversed.