## SECOND NAT. BANK OF ALLEGHENY v. LASH CORPORATION.

(Circuit Court of Appeals, Third Circuit. June 13, 1924.)

No. 3105.

1. **Estoppel ⊜63—Party may not assume inconsistent position after litigation.**

   The rule that, where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct on another and different consideration, is founded on equitable estoppel, and its application depends on whether the facts raise an estoppel.

2. **Estoppel ⊜63—Defendant held estopped to change ground after suit.**

   Where a bank refused to honor drafts drawn against a letter of credit calling for payment for a shipment of sugar on the sole ground of delay in shipment, it cannot, after suit, base its refusal on failure of the bills of lading to conform to the requirements of the letter of credit, which objection might have been obviated by the other party, if made at the time.

3. **Banks and banking ⊜191—Letter of credit for sugar bought if shipped "immediately" held to require prompt shipment, under the circumstances only.**

   A letter of credit promising to honor drafts for a shipment of sugar if shipped "immediately" *held* not to require instant shipment, but only prompt shipment, as soon as possible under the circumstances as known to the parties.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Immediately.]

4. **Banks and banking ⊜228—Whether a shipment of sugar was made within the time prescribed by a letter of credit held properly submitted to the jury.**

   Submission to the jury of the question whether or not a shipment of sugar was made "immediately," within the requirement of a letter of credit, as construed by the court, *held* proper.

In Error to the District Court of the United States for the Western District of Pennsylvania; Robert M. Gibson, Judge.

Action at law by the Lash Corporation against the Second National Bank of Allegheny. Judgment for plaintiff, and defendant brings error. Affirmed.

J. Bruce Orr, John J. Heard, Samuel McClay, and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for plaintiff in error.

Walter Biddle Saul, Francis H. Bohlen, Jr., and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., and Richard W. Martin, of Pittsburgh, Pa., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and BODINE, District Judge.

WOOLLEY, Circuit Judge. [1] At the trial the court applied the rule of the McCarthy case. This now familiar rule, announced by the Supreme Court in Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, approved in Davis v. Wakelee, 156 U. S. 680, 690, 15 Sup. Ct. 555, 559, 39 L. Ed. 578, and followed by federal courts and many state courts, provides that:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration."

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Viewing this statement as the whole of the rule, and regarding the principle of waiver as its basis, some courts have held that where a party justifies his conduct on a ground specifically stated he is deemed to have waived all other grounds, and there the matter ends. This may be a correct interpretation of the quoted expression, but this expression is not the whole of the rule. Having said that a party cannot change his ground after litigation has begun, the court, giving the reason for the rule, continued:

"He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law. Gold v. Bank, 8 Wend. (N. Y.) 562; Holbrook v. White, 24 Wend. 169; Everett v. Saltus, 15 Wend. 474; Wright v. Reed, 3 Durnf. & E. 554; Duffy v. O'Donovan, 46 N. Y. 223; Winter v. Coit, 7 N. Y. 288."

The concluding words clearly indicate that the rule is founded on equitable estoppel. Insurance Co. v. Drake, 214 Fed. 536, 547, 548, 131 C. C. A. 82. Accordingly, when a party, with full knowledge of the facts, as here (Goodman v. Purnell, 187 Fed. 90, 109 C. C. A. 408; Banco Nacional v. Bank (D. C.) 289 Fed. 169, 176), has selected and given one of several available reasons for his refusal to perform his contract or discharge his duty and after suit changes his position and seeks to rely upon the others, federal courts in this circuit, looking to the reason of the rule and keeping in mind the distinction between waiver and estoppel (Shaw v. Spencer, 100 Mass. 382, 395, 97 Am. Dec. 107, 1 Am. Rep. 115), examine the record to find whether it appears that the party has misled his adversary or induced him to alter his position to his prejudice or has himself reaped an advantage by failing seasonably to assert the defense subsequently made—in other words, whether the facts raise an estoppel (Galle v. Hamburg Co., 233 Fed. 424, 147 C. C. A. 360; Spitzer v. Trustees [C. C. A.] 267 Fed. 121, 128; Campbell v. Fetty [C. C. A.] 271 Fed. 671). We lay aside the contention of counsel for the plaintiff in error that the rule in the McCarthy Case is dictum, for, if dictum, it has nevertheless grown to the force of law and is recognized by the courts of New York where the contract in this case was made and by the courts of Pennsylvania where it was to be performed. Brink v. Insurance Co., 80 N. Y. 108, 113; Littlejohn v. Shaw, 159 N. Y. 188, 53 N. E. 810; Grimwood v. Munson S. S. Line (C. C. A. 2) 273 Fed. 166; Galle v. Hamburg Co. (C. C. A. 2) 233 Fed. 424, 147 C. C. A. 360; Goodman v. Purnell (C. C. A. 2) 187 Fed. 90, 109 C. C. A. 408; United Fruit Co. v. Bisese, 25 Pa. Super. Ct. 170, 174; McCormick v. Royal Ins. Co., 163 Pa. 184, 29 Atl. 747; Honesdale Ice Co. v. Lake Lodore Imp. Co., 232 Pa. 293, 81 Atl. 306.

With this understanding of the rule of the McCarthy Case, we inquire whether the trial court erred in applying it to the case at bar? That depends upon the facts. Shortly stated, the facts are these:

[2] On July 8, 1920, the Standard Sugar & Supply Company of Pittsburgh entered into a contract with the Lash Corporation of New York for the purchase of two cars of sugar, the purchaser to furnish "a bank guarantee." Upon the request of the Sugar Company, the Second National Bank of Allegheny addressed a letter of credit to the

Bank of the United States in New York promising to honor drafts drawn by the Lash Corporation on the Sugar Company "calling for two cars of American white granulated sugar at $24.50 per hundred pounds, f. o. b. cars New York, if shipped immediately and accompanied by clean bills of lading without exceptions. These drafts, however, will be honored only upon arrival of cars in Pittsburgh." The price of sugar dropped and the Sugar Company, the purchaser, tried to cancel its contract with the Lash Corporation, the seller, and the bank (whose vice-president was a stockholder and director of the Sugar Company) tried to cancel its outstanding letter of credit. The Lash Corporation, however, proceeded to perform the contract and to hold these parties to their undertakings.

The letter of credit bore date July 20, 1920, and was received in New York on July 22. The first car was loaded on July 23 and bill of lading was given on July 24. The second car was tendered to the railroad company, but owing to car shortage it was not accepted for shipment until July 27, when drafts covering invoices for both cars were drawn against the letter of credit. The bank, in obedience to instructions of the Sugar Company, its customer, refused to honor the drafts upon the single ground of delay in shipment. The Lash Corporation then brought this suit and the bank in its pleadings set up for the first time the additional reasons for its action that the bills of lading did not show the quality of the sugar, that the shipments were not accompanied by clean bills of lading, and that both cars did not arrive in Pittsburgh, all contrary to the terms of the letter of credit. The court, in its rulings and charge, confined the issue to whether or not the bank was justified in repudiating its contract to honor the drafts for the single reason it had given at the time, holding, under the rule of the McCarthy Case, that it was estopped from setting up these additional reasons after suit and submitted the case on the issue whether or not the sugar had been "shipped immediately" as required by the letter of credit. The plaintiff had a verdict and the case is here on the defendant's writ of error. While we have reviewed all of the many assignments of error, we have found that only those which in different ways touch the two matters last mentioned call for discussion.

It is clear that the bills of lading did not conform to the requirements of the letter of credit in three respects: First, they were not clean bills of lading as one contained an exception or reservation; second, they did not describe the kind of sugar (though there was no question that the sugar shipped was the kind ordered), Banco Nacional v. First National Bank of Boston (D. C.) 289 Fed. 169; and, third, one showed delivery of a car not in Pittsburgh but in Uniontown (consigned there on the purchaser's instructions). If the bank when refusing payment of the drafts drawn against its letter of credit had named these grounds as well as that of delayed shipment as reasons for its action, or if, when refusing payment, it had stood mute and had given no reason (as it maintains it did, though on ample evidence the jury has found the contrary), it could have validly set up all these matters in defense; but when it named one ground for its refusal and

remained silent with respect to three, the reasonable intendment of its conduct was to lull the drawer of the drafts to inaction and cause it to let pass what time and opportunity it had to correct the infirmities of the bills of lading, and then, if sued, to reap for itself a benefit from the utterly helpless position into which it had induced its adversary to drift.

We have not overlooked the contention of the bank that there is nothing in the case to show that the plaintiff acted or refrained from acting in any way by reason of its failure to state fully the deviations in the bills of lading from the terms of the letter of credit as grounds for its refusal to honor the drafts. We are, however, constrained to hold that there is evidence which shows that the controversy before suit centered on the one matter of delay in shipment and that the natural and, indeed, the inevitable consequence of silence with respect to the other matters was just what occurred. Wall Grocer Co. v. Jobbers' Overall Co. (C. C. A.) 264 Fed. 71; Polson Logging Co. v. Neumeyer, 229 Fed. 705, 144 C. C. A. 115; Bank of America v. Whitney-Central National Bank (C. C. A.) 291 Fed. 929, 937; Goodman v. Purnell, 187 Fed. 90, 93, 94, 109 C. C. A. 408. While there is no direct evidence on the subject, the transactions themselves constitute evidence which we think sustained the learned trial judge in applying the rule of the McCarthy case and submitting the case on the single issue of delayed shipment.

[3] On the submitted issue of delayed shipment it appears that the defendant by its letter of credit promised to honor drafts calling for two cars of sugar "if shipped immediately." This is a term of the contract and it called for interpretation by the court. Accordingly, the learned trial judge instructed the jury that:

"The words 'shipped immediately,' in that contract, do not mean that the plaintiff shall be required to ship on the instant. By that provision it was required to ship as soon as possible under the circumstances as known to the parties. The words require prompt action, without any delay, having regard to the circumstances of the case. With this definition in mind, you will determine whether or not the plaintiff has satisfied you that it shipped the sugar in question as required by the letter of credit. * * *"

[4] We find no error in this instruction. Certainly the word "immediately" does not mean "instantly." Nor did the parties intend that it should have a meaning impossible of performance. Montooth Borough v. Street Railway Co., 206 Pa. 338, 55 Atl. 1036. The word, manifestly, was intended to have some latitude with respect to performance. It had, therefore, a relative meaning. The things to which it normally related were the circumstances surrounding the thing to be done and especially the circumstances to which the learned trial judge referred as those "known to the parties." In defining thus the word "immediately" the learned trial judge followed Chief Justice Paxson in his interpretation of the same word in Association v. Smith, 126 Pa. 317, 17 Atl. 605, 12 Am. St. Rep. 870, and in submitting the question whether the plaintiff had performed its contract under this interpretation he did what the trial court did in Ephrata Water Co. v. Ephrata Borough, 20 Pa. Super. Ct. 149, 154. A like submission

was made in Fidelity & Deposit Co. v. Courtney, 103 Fed. 599, 43 C. C. A. 331, where it was said that:

"Unless the lapse of time is so long as to be obviously a non-compliance with the contract, the question is one for the jury."

On this submission we think the evidence is sufficient to sustain the verdict of the jury.

The verdict disposes of the question, properly submitted, whether or not the letter of credit, viewed as a contract, was executory or was in process of performance when the bank and the Sugar Company endeavored to cancel their respective undertakings.

The judgment below is affirmed.