### CLARK et al. v. FISHER et al.

(Circuit Court of Appeals, Second Circuit. May 11, 1925.)

No. 326.

1. **Brokers** ⬳23—**Pledgee, to whom stock rightfully pledged by broker, had valid lien, as against broker's customer, on taking over brokerage business.**

Where brokerage company, purchasing stock on margin, pledged such stock to obtain money to pay for it, defendants, to whom such stock was pledged, or who had acquired rights of others to whom stock was pledged, had valid lien, on taking over business of insolvent brokerage house, and was not obliged to deliver the securities to the customer for whom bought, until lien was satisfied.

2. **Estoppel** ⬳95—**Estoppel based on duty to speak, when there is duty to speak and resulting prejudice.**

Estoppel may be based on failure to speak when there are occasions and duty to speak, and when another is actually misled to his prejudice by such failure to speak, and one invoking the doctrine must establish that he was actually misled thereby to his prejudice.

3. **Estoppel** ⬳95—**Brokers' pledgee held not estopped to claim lien on securities by not asserting lien when securities were demanded by owner.**

Brokers' creditor and pledgee, who took over management of business of insolvent bro-

kers and agreed with plaintiff customer for delivery in deferred installments of latter's securities, on which it had lien for advances, which agreement plaintiff later repudiated, *held* not estopped to enforce its lien by not having asserted it when plaintiff demanded securities, since no duty to disclose lien arose until defendant assumed management of the business, and no prejudice to plaintiff resulted; defendant having consistently refused delivery of securities, except under agreement which plaintiff had breached.

In Error to the District Court of the United States for the Southern District of New York.

Action by Jacob L. Fisher and another against James F. A. Clark and others. Judgment for plaintiffs (3 F.[2d] 621), and defendants bring error. Reversed.

Guggenheimer, Untermeyer & Marshall, of New York City (Clarence J. Shearn, of New York City, of counsel), for plaintiffs in error.

Everett, Clarke & Benedict, of New York City (Herman S. Hertwig, and William Montague Geer, Jr., both of New York City, of counsel), for defendants in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. This action is based upon a claim for the conversion of certain named negotiable securities which the defendants in error purchased through the stock brokerage firm of Chandler Bros. & Co. The plaintiffs in error were also a stock brokerage firm and were the New York correspondents of Chandler Bros. & Co., whose principal office was in Philadelphia. The theory of liability on the part of the plaintiffs in error is that at the time of the alleged conversion of the stock they were acting as manager of Chandler Bros. & Co., and as such manager refused to make delivery of the securities of the defendants in error which have never been held by Chandler Bros. & Co., and which have been pledged by them. It is conceded that for 16 days from May 10 to May 26, 1921, the plaintiffs in error exercised supervision and performed acts in the management of Chandler Bros. & Co., pursuant to a contract entered into for that purpose, but it is denied that they possessed the securities in question in their capacity as managers, and they contend that, by a written agreement with Chandler Bros. & Co., the defendants in error waived the right to have possession of the securities, except in agreed monthly deliveries, and, further, that the plaintiffs in

error, as correspondent and banker for Chandler Bros. & Co., had a valid lien upon the securities in question for advances made to Chandler Bros. & Co., secured by a pledge of the securities.

Below it was held that the agreement by the defendants in error to accept monthly deliveries of the securities was unenforceable because (1) a guaranty provided for in the agreement had not been furnished; and (2) that although the plaintiffs in error, as correspondent and banker for Chandler Bros. & Co., had at the time of the demand a valid lien for advances made to Chandler Bros. & Co., and held such securities under this pledge, still it was ruled that the plaintiffs in error were "estopped from now relying upon the actual facts," because the fact of the pledge was not disclosed to the defendants in error at the times the demands were made. The theory of liability therefore rests upon a claim of estoppel by virtue of which the plaintiffs in error for the period of 16 days referred to supervised and participated in the management of Chandler Bros. & Co., which was then in financial difficulties and had in some way waived their lien or were estopped from asserting such lien. The waiver or estoppel is not pleaded, and the case was presented below upon the theory that the stocks were free from any lien and that consequently the defendants in error were entitled to their immediate delivery and possession. The proof established that negotiable instruments, answering the description of the securities mentioned in the complaint, had prior to May 10th been pledged with the plaintiffs in error by Chandler Bros. & Co. for the fulfillment of the latter's orders, and, upon this appearing, the court below permitted an amendment to the complaint and liability was then sought to be imposed upon the theory of estoppel.

The defendants in error, father and son, had been buying through Chandler Bros. & Co. stock and securities on a margin account. Their broker executed his orders along with other customers, by transmitting correspondence orders in the firm name to various corresponding bank and brokerage firms in New York City. In addition to the plaintiffs in error, their correspondents included four other houses, the business of which houses the plaintiffs in error took over between December 14 and 18, 1920, paying therefor in cash the debit of Chandler Bros. & Co. to them. As a consequence of these payments, plaintiffs in error received and held as security the securities then held in pledge by those firms. By this transaction, the plaintiffs in error were substituted as pledgee for whatever securities were possessed by the several houses. It appears in the record that prior to the 25th of May, 1921, Chandler Bros. & Co. owed the plaintiffs in error sums of money as security for which they pledged all the securities purchased together with securities deposited with and transferred by Chandler Bros. & Co. from time to time as margin. An examination of these transactions shows a variation from day to day as orders were executed and deliveries made. The account of the defendants in error with Chandler Bros. & Co. was produced in evidence, and all of the securities involved, excepting 100 shares of Arkansas Natural Gas bought April 15, 1921, had long antedated December, 1920, in time of purchase. At this time, the defendants in error's testimony indicated that they had sold most of the stock in December, 1920, to establish income tax losses, rebuying them subsequently, so that nearly all the stock might be said to have been purchased in December, 1920. At this time, defendants in error's debit balance with Chandler Bros. & Co. was $68,000.

It is admitted by the defendants in error in their testimony that the stocks purchased were used as broker's security for other advances made to fill the orders and were subsequently pledged by their brokers to obtain moneys with which to pay for the stock by borrowing on them as collateral. They recognized the right of Chandler Bros. & Co. to pledge the stock purchased on their orders to the extent of their indebtedness for the purchase price of the shares at that time. Up to the end of March, 1921, there had been executed for the orders of the defendants in error and Chandler Bros. & Co. were obliged to deliver to them upon payment therefor, the following securities:

35 Ohio Fuel.
1,057.28 Sinclair Consolidated.
200 St. Paul preferred.
600 Rock Island 6 per cent. preferred.
1,000 Middle States Oil.
100 Gilliland Oil.
200 Simms Petroleum.
300 Missouri Pacific preferred.
200 Pan-American Petroleum.

As near as these securities were traced in the evidence, all of these purchases were made through stock exchange firms other than the plaintiffs in error, with the exception of 200 shares of Sinclair Consolidated and 100 shares of Arkansas Natural Gas, which were in the margin account of the plaintiffs in error with Chandler Bros. & Co.

on May 10, 1921, and were received by the plaintiffs in error from the National Bank of Commerce on April 18, 1921, with other stocks upon the payment of $12,500 for the account of Chandler Bros. & Co. It thus appears that all the securities in controversy, with the possible exception of 200 shares of Sinclair Consolidated, were held by the plaintiffs in error in pledge for the indebtedness of Chandler Bros. & Co. to the plaintiffs in error on March 10, 1921. They were received either directly from Chandler Bros. & Co. or through the accounts of other houses and purchased as referred to.

In March, 1921, the defendants in error paid Chandler Bros. & Co. $35,000, which was borrowed from their bank in Pennsylvania, thus reducing their indebtedness. On April 12th, the defendants in error learned that Chandler Bros. & Co. were in financial difficulties and the next day attended a meeting held to discuss the situation of the firm and its future program. As a result of this meeting, a plan for reorganization was agreed upon; a Delaware corporation was organized, the shares of stock of which were to be distributed among the creditors of Chandler Bros. & Co. The plan provided for the supervision and management of the business of Chandler Bros. & Co. by the plaintiffs in error. An agreement accordingly was entered into on May 10, 1921. On April 13, 1921, the defendants in error gave orders, which were carried out, to sell securities aggregating $32,506. Mr. Clark, of the plaintiffs in error's firm, negotiated with the defendants in error, as a result of which it was agreed that, if fresh capital amounting to $750,000 was put into the Chandler Bros. & Co. firm, and if no customers should be preferred, the defendants in error would enter into an agreement to make delivery of $50,000 of their stock provided Mr. Clark would guarantee them in writing the delivery of the balance of the stock that he had bought, amounting approximately to $50,000. One of the defendants in error testified to this and stated that it was agreed to and that Mr. Clark said, "Those stocks are absolutely secure." On April 20th, the defendants in error served a written demand on Chandler Bros. & Co. to transfer all the stock in their account to another brokerage house. On April 25, 1921, the defendants in error signed a letter agreeing that:

"On the balance of our stocks so remaining, amounting to approximately $50,000, you are to deliver to us 150 shares of our Rock Island 6 per cent. preferred stock, and $1,000 in cash on May 4, 1921, and on the 1st days of June, July, August, September, October, November, and December, 1921, and on January 1, 1922, $5,000 of our said stocks, at their present market value, or, at our option, $5,000 in cash, on said dates."

The Rock Island stock was delivered and a check for $1,000 was paid, and thereafter payments amounting to $20,000 were made as provided. The Delaware corporation was organized May 7, 1921, as provided by the plan. The reorganization became effective May 10, 1921. This plan was known to the defendants in error, but on May 9th, after accepting the $10,000, the defendants in error demanded immediate delivery to them of all the balance of the stocks in their account and thereupon repudiated the agreement pursuant to which they had received $10,000 in cash. Subsequently, one of the defendants in error had several interviews with Mr. Clark, in which, in substance, the latter assured him that the reorganization would result in his obtaining his securities or value and urged him to continue to go along with the plan.

[1-3] The demand and refusal which forms the basis of the alleged conversion is as of May 26, 1921. On May 21, and again on June 29, the $5,000 was forwarded to and retained by the defendants in error "as per our agreement with you dated April 25, 1921." On July 26, 1921, Chandler Bros. & Co. were adjudicated a bankrupt and defendants in error retained the $20,000 paid. Upon these facts, we think the plaintiffs in error had a valid lien and that they were not obligated to deliver the securities in question until that lien was satisfied. No theory of estoppel invalidated such lien. Estoppel may be based upon a failure to speak when there are occasions and duty to speak, and where another is actually misled to his prejudice by the failure to speak, and one invoking the doctrine must establish that he was actually misled thereby to his prejudice. Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868; Ackerman v. True, 175 N. Y. 353, 67 N. E. 629.

The theory below seems to have been that during the talks of Mr. Clark and the defendants in error, the former refrained from asserting the lien of the plaintiffs in error. But, if the testimony of the defendants in error be true, they constantly demanded the return of the stocks before and after May 10th, the date upon which the affairs of Chandler Bros. & Co. came under the management of the plaintiffs in error. There was, therefore, no prejudice resulting to the defendants in error. The theory that

another brokerage house may have taken up with the Stock Exchange the failure to deliver the securities and thus administered punishment to Chandler Bros. & Co. is of no force. Indeed, it appears from the testimony of the defendants in error that between May 14th and 25th Mr. Clark had told them that he had laid the matter before the Stock Exchange, which had ruled that the stocks were only deliverable under the deferred delivery contract which the defendants in error had made. The injury, if any, to the defendants in error, was the refusal to deliver the stock upon demand. If this was wrong, the relief of the defendants in error was for conversion; and at once, upon demand for delivery and failure to comply, any relief that might have been obtained from the Stock Exchange was open to them.

The authorities referred to below by the defendants in error (Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Goodman v. Purnell, 187 F. 90, 109 C. C. A. 408; Rand v. Morse [C. C. A.] 289 F. 339) are not applicable. In each of these cases it was sought to recover for damages for breach of contract and it was held that, where a party had assigned one reason for his failure or refusal to complete his agreement, he could not, when sued thereon, assign other and different grounds. It appears that the interviews referred to by one of the defendants in error with Mr. Clark were prior to May 10th. The liability of the plaintiffs in error is predicated upon their assuming the management of Chandler Bros. & Co., and liability cannot be imposed for what occurred prior to May 10th. But the fact that the stocks were under pledge justified the failure to deliver until the lien was satisfied. Therefore there was no legal obligation imposed upon Mr. Clark to assert his lien at the interviews prior to May 10th. The interviews after May 10th had solely to do with whether or not the plaintiffs in error were offering to deliver the stock, but insisting that the delivery should be made in installments as per the agreement. The question of lien had no bearing upon their right to make deferred deliveries. Since they were willing and offered to make the deliveries pursuant to this agreement, there was neither occasion nor duty requiring the plaintiffs in error to add that there was another and additional ground debarring the defendants in error from the right to have possession of the stocks, namely, that they were under pledge.

The 200 shares of Sinclair Consolidated were bought by the plaintiffs in error on an order of Chandler Bros. & Co., and held as margin for the advances to Chandler Bros. & Co. in the execution of the former firm's orders pursuant to the arrangement between the firms. At the time of the various interviews prior to May 10, 1921, the relation of the plaintiffs in error with Chandler Bros. & Co. was that of broker and customer executing orders transmitted by or secured by margin deposit and a lien for advances made to consummate the purchase. The defendants in error were fully informed of this relationship. They likewise knew that the stocks purchased in the manner described were held as broker's security for the advances. Since there was a valid lien, which was in no way waived, but persistently asserted, it was error for the court below to refuse to direct a verdict as requested for the plaintiffs in error.

Judgment reversed.